**COURIER POST PUB. CO. v. FEDERAL
COMMUNICATIONS COMMISSION.**

No. 7091.

United States Court of Appeals for the
District of Columbia.

Decided March 6, 1939.

Eliot C. Lovett, of Washington, D. C., for appellant.

H. Gary, George B. Porter, F. Neyman, Wm. H. Bauer, and Basil P. Cooper, all of the Federal Communications Commission, all of Washington, D. C., for appellee.

Before GRONER, Chief Justice, and MILLER and VINSON, Associate Justices.

VINSON, Associate Justice.

This is an appeal from a decision by the Federal Communications Commission, denying the application of appellant, The Courier Post Publishing Company, a Missouri corporation, for a permit to construct a new radio broadcasting station at Hannibal, Missouri, to operate on a frequency of 1310 kcs. with power of 250 watts daytime and 100 watts nighttime.

The applications of appellant and the Hannibal Broadcasting Company, for somewhat similar facilities, were heard before an examiner; the intervener, The Illinois Broadcasting Corporation, operating station WTAD, at Quincy, Ill., participating. The examiner recommended that the application of the Hannibal Broadcasting Company be denied, and that the application of the appellant be granted with power of 100 watts, unlimited time. Oral argument was had before the Commission, which entered its final order denying both applications. The Courier Post Publishing Company is here on appeal.

The statute defining the duty of the Commission in issuing radio construction permits is section 307, Communications Act of 1934, 47 U.S.C.A. § 307, which provides, in part as follows:

"(a) The Commission, if public convenience, interest, or necessity will be served thereby, subject to the limitations of this chapter, shall grant to any applicant therefor a station license provided for by this chapter.

"(b) In considering applications for licenses, and modifications and renewals thereof, when and insofar as there is demand for the same, the Commission shall make such distribution of licenses, frequencies, hours of operation, and of power among the several States and communities as to provide a fair, efficient, and equitable distribution of radio service to each of the same."

Section 402(e) of the Communications Act of 1934, 47 U.S.C.A. 402(e), provides in part: "That the review by the court shall be limited to questions of law and that findings of fact by the Commission, if supported by substantial evidence, shall be conclusive unless it shall clearly appear that the findings of the Commission are arbitrary or capricious."

The facts upon which the Commission based its decision include the following: Hannibal has a population of 22,761 (1930 census); it is the seventh city in Missouri in size and fourth in industrial importance. There are 63 factories with annual output of more than $21,000,000; one employing some 3300 persons; another normally more than 500 persons. It has 34 wholesale and 333 retail establishments. Hannibal La Grange College is located there. Enrollment of public schools exceeds 4,200; three parochial schools have a registration of about 600. There are 39 churches. There are three newspapers, a daily published by the appellant with a circulation in excess of 7,500, principally within a radius of fifty miles. The other two are weeklies, one wholly devoted to labor union matters and the other entirely to negroes. 27 weekly papers are published in surrounding towns, but are not substantial competitors with the appellant's paper in circulation or advertising. The total assets of appellant, as of October 31, 1936, were $176,840, exclusive of good will and circulation structure, and its liabilities were $3,355. At least $80,000 is spent annually in Hannibal on advertising, of which $60,000 to $70,000 is of local origin. Three banks are located there with combined deposits of $5,844,000 and six building and loan associations with resources of more than $4,000,000. It is served with three trunk line railroads, two U. S. highways, and water transportation on the Mississippi River. It is the center of a rural trading area having a population of 100,000, the largest town within that area having a population of less than 4,000. We shall set

forth hereinafter the facts relating to radio service afforded Hannibal and vicinity.

The Commission in denying appellant's application found that "applicant is legally, technically, financially, and otherwise qualified as an applicant for a construction permit to erect a local broadcast station of the kind and class applied for herein"; that "on the question of public need for the service which these applicants propose to render, we note that Hannibal now receives primary broadcast service from three stations one of which broadcasts programs originated by residents of Hannibal, and that it also receives secondary service from a number of stations. We are, therefore, unable to find, upon the record before us, that a public need of such nature exists in Hannibal for a local broadcast station as would justify a grant of * * * [appellant's] application[s]": and, that the public interest, convenience, and necessity will not be served by granting appellant's application. Whereupon, it entered its final order denying it.

The burden of proof is upon the appellant to show that the granting of its application would serve public convenience, interest or necessity.[1] Though it sustains the burden, the order of the Commission denying the application must not be disturbed unless there be error in law. The Commission's findings of fact upon which the order rests are conclusive, if supported by substantial evidence, unless it clearly appears that such findings are arbitrary or capricious.[2]

Appellant assigns as error the finding that there is not a public need in Hannibal for a local broadcasting station. It is the contention of the Commission that the appellant has failed to show such need for a local broadcasting station as would justify the granting of its application, for the reason that (1) Hannibal receives satisfactory programs from other stations, (a) clear channel net-work stations, and (b) a regional station, WTAD, operating from Quincy; and (2) there is no demand shown by the merchants of Hannibal for this service. Appellant's second assignment is that the Commission erred in refusing to apply the same standards as adopted and applied in similar cases theretofore decided by it.

By reason of its regulatory and supervisory functions under the Act (48 Stat. 1064, 47 U.S.C.A. § 151 et seq.), the Commission has provided for four classes of radio stations. These are clear channel, high power regional, regional, and local. Appellant applied for, and predicated its entire case upon the need of, a local station, as distinguished from any other type of station. The regulations of the Commission define a local station to be one licensed to operate with other stations assigned to the same frequency designated for such use, and with an authorized power of 100 watts at night and not more than 250 watts during daytime. The Commission has defined a local station to be one which will serve "to present programs of local interest to the residents of that community; to utilize and develop local entertainment talent which the record indicates is available; to serve local, religious, educational, civic, patriotic, and other organizations; to broadcast local news; and to generally provide a means of local public expression and a local broadcast service to listeners in that area." Okmulgee Broadcasting Corporation, 4 F.C.C. 302. Appellant's application was not concerned with existing clear channel, high power regional, or regional programs, or the clarity of reception, but upon a local need for a local station. It proposed to give portions of its time, without charge, to the various local civic, educational, athletic, farming, fraternal, religious, and charitable organizations. Its proposed program consists of: Entertainment 42%, educational 20%, news 9%, religious 9%, agriculture 10%, fraternal 5%, and civic activities 5%. The tentative program contemplated, particularly, the use of the facilities of the station to aid education in supplementing class-room work, and in broadcasting from a secondary studio located at Hannibal La Grange College subjects of scho-

[1] Goss v. Federal Radio Commission, 62 App.D.C. 301, 67 F.2d 507.

[2] Federal Radio Commission v. Nelson Bros. Bond & Mtg. Co., 289 U.S. 266, 53 S.Ct. 627, 77 L.Ed. 1166; Mackay Radio & Telegraph Co. v. Federal Commun. Comm., 68 App.D.C. 336, 97 F.2d 641; Heitmeyer v. Federal Commun. Comm., 68 App.D.C. 180, 95 F.2d 91; Missouri Broadcasting Corp. v. Federal Commun. Comm., 68 App.D.C. 154, 94 F.2d 623; Saginaw Broadcasting Co. v. Federal Commun. Comm., 68 App.D.C. 282, 291, 96 F.2d 554; Eastland Co. v. Federal Commun. Comm., 67 App.D.C. 316, 92 F.2d 467; Telegraph Herald Co. v. Federal Radio Comm., 62 App.D.C. 240, 66 F.2d 220; Davidson v. Federal Radio Comm., 61 App.D.C. 249, 61 F.2d 401.

lastic interest and athletic events; the use by the Hannibal Chamber of Commerce to further business relations; the use by the County Agriculture Agent to bring before farmers and farm clubs the subject matter that is offered through the United States Department of Agriculture and Missouri College of Agriculture on farm problems; the use by the County Health Department to give information concerning maternity and child health, public health problems, particularly prevention of disease, food and milk control, and general sanitation; the use of the station by business in advertising; the promotion of literary and philanthropic activities; the promotion of better civic spirit; the furtherance of physical culture and social activities of the Y.M.C.A. and Boy Scouts; and, the broadcasting of daily religious services of the several Hannibal churches. It planned to use local talent—an abundance of which was shown to be available—and in this manner serve public interest of that area. Thus, it appears that the petition for a construction permit is supported by overwhelming evidence showing the local need for a local station to serve in the manner set out. To secure a local station there is no need for the applicant to show that the programs of clear channel, high power regional, or regional stations were not satisfactory in character or quality.

The testimony of the Commission's engineer is the only evidence that we find in the record speaking to the radio service afforded Hannibal and vicinity by any station other than WTAD. His testimony is not contradicted and is: That KMOX at St. Louis, 94 miles away, renders a satisfactory service for the *residential* portion of Hannibal, and the surrounding *rural* area. *It is the only station that serves such area day and night.* KSD at St. Louis serves the *residential* portion of Hannibal and the *rural* area *during the daytime.* Each of these stations is a *clear channel, net-work* station. Station WEW, which operates in the St. Louis area *daytime* only, provides satisfactory *rural* service, as does station WCAZ, at Carthage, Ill., 50 miles distant, *daytime* only, and station WHO, Des Moines, Iowa, 170 miles from Hannibal, unlimited time. (Italics supplied). In addition to these stations, there is secondary service of an intermittent nature available from various distant clear channel stations at night.

None of these stations provide for the local needs of Hannibal; none of them serve the needs of the business district of Hannibal; and, none are local stations. KMOX, a clear channel, net-work station, is the only unlimited time station serving the residential section of Hannibal. It thus appears that unless the service given by WTAD supports the finding in this respect, there is no support in the record.

The Commission's engineer testified that the best radio broadcast service now available to the area sought to be served by the appellant is from a *regional* station, WTAD, located at Quincy, Ill., 17 miles distant. It operates with power of 1 kw., *daytime only,* and gives satisfactory service throughout all the residential area of Hannibal and rural vicinity, but might be subject to some interference in the business district. The WTAD signal in the Hannibal area, when operating with 1 kw., would be something more than 5 mv/m. In a business district of a city at least 10 mv/m is necessary for interference-free service. The business district is therefore excluded. It occurs to us that the business district is also entitled to receive radio service, and that both sections are entitled to night service. The examiner found that WTAD provided services of a local character to Hannibal and vicinity *"incidentally* only and not primarily,"; and further that "This, *obviously,* does not meet all the requirements for radio broadcasting in this community."

The affirmative evidence is overwhelming that there is need for a local station in Hannibal and that WTAD does not fill this public need. The only evidence in the record tending to show that station WTAD does so serve Hannibal and vicinity is that given by its manager. We have examined his testimony very carefully and find no substantial evidence therein to support the contention of appellee that WTAD serves as a local radio broadcasting outlet for Hannibal, or that it serves the need of the Hannibal merchants and manufacturers as a local advertising medium, and we hold that his testimony does not support the findings of the Commission that there is no public need for a local station. The instances of isolated local service referred to in his testimony are not substantial evidence which controverts the showing of public need of Hannibal for a local station. These instances are the aid in arresting a bank robber in 1934 (the robbery occurred in Girard, Ill.); the broadcasting for the Mark Twain Centennial celebration in 1935; the occasional use of its facilities by a Hannibal

minister in the 20 minute daily period (30 minutes on Sunday) set apart for ministers from three states, Illinois,. Missouri, and Iowa; and a thirty minute regular "spot" advertising feature in a week's program covering 73¼ hours. The exhibit filed by the intervener submitted an average weekly program of WTAD. This very clearly shows that a local program for Hannibal is not supplied, since only this one-half hour of "spot" advertising is devoted to broadcasts directly concerning Hannibal people or their local interests. This service for a competing sister city 17 miles distant in another State does not in any respect meet the Commission's own definition of a local station. It is admitted by the manager of WTAD that this station operates only to local sunset and thus, if it did serve Hannibal locally, there would be no night service of a local character available. The Supreme Court has declared substantial evidence to be "more than a scintilla, and must do more than create a suspicion of the existence of the fact to be established. 'It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion', [3] and it must be enough to justify, if the trial were to a jury, a refusal to direct a verdict when the conclusion sought to be drawn from it is one of fact for the jury. [cases]" [4] We hold there is no substantial evidence in support of the finding that WTAD renders local service to Hannibal, or that this station originates programs local to Hannibal, or that WTAD meets the public need of Hannibal for a local broadcasting outlet.

The final action of the Commission was taken upon the whole record, including the examiner's report and exceptions thereto. Among other things, the examiner found: "There is *need* for a broadcast station in Hannibal, Missouri, and listeners in this area are *definitely entitled to service of local interest"*; that operating with power of 250 watts until local sunset would cause objectionable interference to the service of station KWOS at Jefferson City, Mo., during daytime hours, but there would be no interference from KWOS to appellant's proposed station; that operating with 100 watts power, unlimited time, would not cause any objectionable interference whatsoever, and the interests of no existing stations, nor of any pending applications would be affected by reason of interference; that appellant's application "may be granted within the purview of Section 307 of the Communications Act of 1934, as amended on June 5, 1936, [§ 2, 47 U.S.C.A. § 307], and such grant would be in accordance with the equitable distribution of radio broadcast stations to permit the use of the facilities sought in the instant case"; that WTAD provides service "to the city of Hannibal, and in some portions of the area sought to be served herein in addition thereto with a satisfactory signal, it provides service *of local interest to Hannibal incidentally only* and not primarily", and that "this *obviously* does not meet all the requirements for radio broadcasting in this community." (Italics supplied.)

It was the examiner's recommendation that appellant's application on a frequency of 1310 kcs., with 100 watts power, unlimited time, be granted. We have said in Heitmeyer v. Federal Commun. Comm., supra: "In view of the fact that the Examiner made a correct finding upon the point— among other well prepared findings—the Commission's finding cannot be regarded as other than arbitrary and capricious. While the Commission is not bound by the findings of the Examiner, it is itself charged with the responsibility of making findings. [Cases.] In this case it would have profited from a more careful consideration of those which the examiner prepared." [68 App.D. C. 180, 95 F.2d 96] We think this observation is particularly pertinent here.

The Commission, in its brief, stresses the engineer's reference to interference with station KWOS and the recital thereof in the statement of facts. by the Commission. The Commission does not find that this interference is such that a denial would be justified upon this ground. It makes no finding thereon. The record shows that the Commission had before it an attempted waiver in the form of a letter from the attorney representing KWOS, and also that the examiner recommended the issuance of the permit with 100 watts power which would cause no interference. It may be that either or both of these reasons moved the Commission to pass this question of interference, but at any rate, it was ignored by the Commission in its findings and does not enter into the case.

---

[3] Consolidated Edison Co. v. National Labor Relations Board, 59 S.Ct. 206, 83 L.Ed.126, decided December 5, 1938.

[4] National Labor Relations Board v. Columbian Enameling & Stamping Co., 59 S.Ct. 501, 83 L.Ed. —, decided February 27, 1939.

The Commission contends that there is no demand by local merchants for this station. There is no contradiction of the fact that 333 retail merchants and 63 factories are potential customers and supporters of the proposed radio station. Uncontradicted testimony is that more than thirty business enterprises have been personally contacted by the manager of the proposed station and that this number has promised to use the new facilities, and that 150 odd firms are expected to avail themselves of the new service. The estimated advertising income from local business is expected to run from $2,000 to $2,500 per month, while income from national advertising is expected to add from $100 to $500 per month. The average monthly operating cost of the proposed station is estimated to be $1825. Thus it appears that there will be a substantial margin of profit in operating the station. In addition to this, the appellant stands with its resources behind this radio activity and insures complete financial support that will enable high standards of public service to be maintained by the station. This showing fully meets the financial standing necessary for the construction of the station under the law and supports the specific finding of the Commission that the appellant qualified by financial standards.

■■■ Second. The remaining assignment is that the Commission erred in refusing to apply herein the same standards adopted in similar cases decided by it. In support of this assignment, the appellant cites many Commission decisions in which a city as small as, or smaller than, Hannibal had been granted a local station.[5] These cases show that, in the past, the Commission has definitely laid down a policy of granting permits for local stations to communities served with clear channel and regional stations, but having no local service. It is clear that in all the cases cited lack of a local station was controlling in the determination of the Commission that under the direct provisions of the statute the rights of the citizens to enjoy local broadcasting privileges were being denied, and that public convenience, interest, or necessity would be better served by the granting of the permit for a local station. We cannot subscribe to appellant's theory that these cases are such as will control the action of the Commission. It is very difficult to find cases that square on the facts. In administering the law, the Commission must consider each case upon its individual grounds. The permit should be granted if it meets the statutory criterion of public convenience, interest or necessity, if not, it should be denied. In the instant case, it seems to us there has been a departure from the policy of the Commission expressed in the decided cases, but this is not a controlling factor upon the Commission. We must keep in mind that the findings of fact by the Commission in this case are conclusive if supported by substantial evidence, unless it clearly appears that they are arbitrary or capricious.

We hold that the appellant has sustained the burden of proof that there is a public need for a local station in Hannibal; that there is no substantial evidence in the record supporting the finding of the Commission that no such public need exists; and, that the finding by the Commission that the public convenience, interest, and necessity would not be served by granting the permit for a local station is in law arbitrary and capricious.

Reversed and remanded.

[5] Palestine Broadcasting Association, 2 F.C.C. 107; Reynolds and Reynolds, Jr., 2 F.C.C. 124; Lake Region Broadcasting Company, 2 F.C.C. 365; Navarro Broadcasting Association, 3 F.C.C. 422; Press Democrat Publishing Company, 3 F.C.C. 544; Plattsburg Broadcasting Corporation, 4 F.C.C. 75, 76; Berger and Freeman, 4 F.C.C. 590; Okmulgee Broadcasting Corporation, supra.