**COLORADO RADIO CORPORATION v. FEDERAL COMMUNICATIONS COMMISSION (MEYER, Intervener).**

No. 7582.

United States Court of Appeals for the District of Columbia.

Decided Feb. 3, 1941.

Ben S. Fisher, Charles V. Wayland, and John W. Kendall, all of Washington, D. C., for appellant.

Telford Taylor, Joseph L. Rauh, William J. Dempsey, and William C. Koplovitz, all of Washington, D. C., for appellee Federal Communications Commission.

Geo. O. Sutton, of Washington, D. C., for Intervenor.

Before MILLER, VINSON, and EDGERTON, Associate Justices.

VINSON, Associate Justice.

Appellant, Colorado Radio Corporation, is licensed to operate the regional station, KVOD, at Denver. It and another regional station, KFEL, with which it had been sharing time, applied for permission to increase power and to operate unlimited time. F. W. Meyer filed an application for permission to construct and operate a local station in the same city. A hearing on this application, in which appellant and KFEL were intervenors, was held in May, 1938. On March 20, 1939, the Commission granted construction permits to KVOD and KFEL which authorized increased power and unlimited operation. The Commission denied the Meyer application in May, 1939, whereupon he filed a petition for rehearing. On October 10th, licenses to cover the construction permits to KVOD and KFEL were granted. On October 24th, the Commission set aside its decision in the Meyer case. Reargument, in which appellant participated, was held on November 9th. On November 15th, the Commission granted the application. On December 6th, the appellant filed a motion for rehearing which was denied, and it appeals.

The Commission moved to dismiss appellant's appeal on two grounds. First, the appellant has failed to show that it has standing here within the meaning of section 402(b) (2).[1] Second, the Reasons for Appeal do not allege any error of law in the Commission's action.

We believe that the appellant is a person aggrieved within the meaning of section 402(b) (2) as construed by the Supreme Court in the Sanders case.[2] The Court held that a person who stands to be hurt financially is entitled to appeal.[3] Appellant's tenth reason for appeal reads: "That the Commission's action in granting the application of F. W. Meyer and

[1] 47 U.S.C. § 402(b) (2), 47 U.S.C.A. § 402(b) (2).
The intervenor also moved to dismiss the appeal.
[2] Federal Communications Comm. v. Sanders Bros. Radio Station, 309 U.S. 470, 60 S.Ct. 693, 84 L.Ed. 869.
[3] "It does not follow that, because the licensee of a station cannot resist the grant of a license to another, on the ground that the resulting competition may work economic injury to him, he has no standing to appeal from an order of the Commission granting the application." 309 U.S. page 476, 60 S.Ct. page 698, 84 L.Ed. 869. Congress "may have been of opinion that one likely to be financially injured by the issue of a license would be the only person having a sufficient interest to bring to the attention of the appellate court errors of law in the action of the Commission in granting the license." 309 U.S. page 477, 60 S.Ct. page 698, 84 L.Ed. 869. "We hold, therefore, that the respondent had the requisite standing to appeal and to raise, in the court below, any relevant question of law in respect of the order of the Commission." 309 U.S. page 477, 60 S.Ct. page 698, 84 L.Ed. 869.

denying the petition of KVOD for a rehearing to show the changed condition in the City of Denver, *more particularly the injurious economic effect the operation of the proposed station will have on KVOD*, was arbitrary, capricious and was a denial to KVOD of a fair and impartial hearing." A liberal construction of this statement, plus the recognition of the competitive relation that will exist between KVOD and the Meyer station, places appellant within the rule of the Sanders case.

This brings us to the Commission's second contention that the appeal should be dismissed because appellant has not alleged any errors of law. We believe that the appeal should be dismissed, but upon the ground that the appellant is foreclosed from raising the questions it endeavors to present here.

The only statements in the Reasons for Appeal that can be considered as stating errors of law are that the appellant was not allowed to reopen the record to show a changed condition, and that the Commission did not consider the effect of the changed condition.

The changed condition is that two former half-time stations became full time stations. The appellant, in its brief, sets out the possible effects of the new full time station grants on Meyer's application, states that the Commission was apprised of this fact in its motion for rehearing, asks what value was its participation in the proceedings if it cannot show how ability to serve and economic conditions have changed between the time of the hearing on and the Commission's grant of the Meyer application, and concludes that it should have been determined whether the public would have been adversely affected by granting still another station.

 Granting the Meyer application, after another station had been allowed might, for example, impair the revenue to one or all,[4] might make the securing of adequate talent difficult, and in the end

the public might suffer. Refusal by the Commission to allow appellant, who had been a full-fledged intervenor from the start of the proceedings to present evidence on the implications and consequences of adding, in net effect, one full time station, might well be error. However, we feel that we should not pass upon this question in the present case since the appellant is foreclosed from asserting such error, if error it is.

The changed condition already existed at the time of the reargument on the Meyer application. As has been pointed out, the Commission's authorization of two full time stations instead of the two half-time ones came on March 20, 1939. Meyer's application was denied in May. Licenses to cover the construction grants to the new full time stations were issued on October 10th. On October 24th the Commission set aside its decision denying the Meyer application and there was reargument on November 9th. Thus, appellant could have moved to submit additional evidence concerning the changed condition at any time between October 24th and November 9th. This it did not do, nor did it suggest its desire to offer further evidence until December 6th, twenty days after the Commission approved the Meyer application.

Appellant took its chance that the Commission, on the existing record, would revert to its previous decision although it had been set aside.[5] Now that the decision has gone against it, the appellant wants a chance to persuade the Commission with a supplemental record. We cannot allow the appellant to sit back and hope that a decision will be in its favor, and then, when it isn't, to parry with an offer of more evidence. No judging process in any branch of government could operate efficiently or accurately if such a procedure were allowed.

The Reasons for Appeal are bottomed on nothing that happened between November 9th and December 6th, the date on which the appellant asked for a rehearing. There

---

[4] Economic injury to a licensee can be relevant on the issue of public interest. Federal Communications Commission v. Sanders Bros. Radio Station, 309 U.S. 470, 60 S.Ct. 693, 84 L.Ed. 869; Tri-State Broadcasting Co. v. Federal Communications Commission, 71 App.D.C. 157, 107 F.2d 956; Woko, Inc., v. Federal Communications Commission, 71 App.D.C. 228, 109 F.2d 665.

[5] Meyer, in his petition for rehearing,

stressed Courier Post Publishing Co. v. Federal Communications Commission, 70 App.D.C. 80, 104 F.2d 213. In that case this court held that an applicant for a local station need not show that the programs of the clear channel, high power regional, or regional stations are not satisfactory. Denver had one clear channel, four regional, and no local stations when the reargument was held on the Meyer application.

must be an end to determinations and re-determinations. The issue was crystallized and the record could have been made before the Commission's action. Appellant has not properly exhausted its administrative remedy. [6]

It might be countered that the appellant is not entirely foreclosed by its delay because having a status by which it is allowed to correct all errors of law it can contend that the error of law alleged is not only that it was denied an opportunity to adduce additional evidence, but also that the Commission failed to consider the effect of the changed condition. Such an error, however, is not sufficiently alleged. The fact that a new station was operating did not have to be put in the record for the Commission could, and, as is shown by its opinion, did, take official notice of it. The appellant makes no definite and specific showing that the result is not supported by the evidence. Thus, appellant's contention must necessarily simmer down to the position that further facts, showing in more detail and in light of experience the effect of the new station, were in existence and could have been made part of the record.

Under these circumstances to allow the appellant to allege as an error of law a situation that it took no timely steps to correct by presenting its evidence in full would change its position from that of an interested party under the statute to that of a mere vigilante. As we said in the Red River case, "The burden, therefore, is, and properly should be, upon an interested person to act affirmatively to protect himself. It is more reasonable to assume in this case a legislative intent that an interested person should be alert to protect his own interests than to assume that Congress intended the Commission to consider on its own motion the possible effect of its action in each case, upon every person who might possibly be affected thereby. Such a person should not be entitled to sit back and wait until all interested persons who do so act have been heard, and then complain that he has not been properly treated. To permit such a person to stand aside and speculate on the outcome; if adversely affected, come into this court for relief; and then permit the whole matter to be reopened in his behalf, would create an impossible situation." [7]

To say that this rule should be altered when the appellant incidentally and indefinitely states that the public may be injured overlooks reality. Congress may have thought that a competitor because of his financial interests would go to the trouble of presenting evidence and contentions which might have a bearing on the public interest as well as his own. But the public is not likely to suffer if the evidence is not sufficiently strong to prevent the appellant from forgetting it at the proper time in his own behalf. And, after all, the Commission is the chief protector of the public interest.

The motion to dismiss should be granted.

Appeal dismissed.

EDGERTON, Associate Justice (concurring).

I concur in the opinion of the court, except its implication that there is only one reason for dismissing the appeal.

The Sanders case determines that one likely to be financially injured by the issue of a license has standing to appeal and "to raise * * * any relevant question of law in respect of the order of the Commission," i. e., "to bring to the attention of the appellate court errors of

---

[6] Red River Broadcasting Co. v. Federal Communications Commission, 69 App.D.C. 1, 98 F.2d 282, 286.

[7] Id., 69 App.D.C. at pages 5, 6, 98 F. 2d at pages 286, 287. In the Red River case the appellant had not participated in any of the proceedings, but it was shown that it must have had actual notice before the time expired for requesting a rehearing. In the instant case the appellant has been an intervenor all of the way. The following language from the Red River case is, therefore, pertinent. "We do not decide that appellant was, in any event, entitled to wait until the time for rehearing and then for the first time come in. Its duty was to seek the first administrative remedy available to it before the Commission. If, having such notice as it was entitled to have at an earlier stage of the proceeding, it neglected to avail itself of such an opportunity, it may thus have foreclosed itself from seeking further relief." 69 App.D.C. pages 6, 7, 98 F.2d pages 287, 288. It is believed that nothing in the section of the Act dealing with rehearings (47 U.S.C. § 405, 47 U.S. C.A. § 405) or in the Commission's rules, (Part 1, § 1.271) evidences any relaxation of the general principle that a party must be diligent in the presentation of his case.

law in the action of the Commission in granting the license."[1] I think that the present appeal raises no relevant question of law.

The Sanders case permits an appellant to come here, but not to succeed here, on the basis of financial injury to himself. In order to succeed, one who appeals against the granting of a license must present reasons why the license should not have been granted. The Supreme Court held in the Sanders case that injury to the appellant, another licensee, is not such a reason. The fact of injury to him entitles him to present relevant matters, but is not itself a relevant matter; it entitles him to be heard, but it is not among the things concerning which he is entitled to be heard. He appears only as a kind of King's proctor, to vindicate the public interest. The Sanders case decides that competition between an existing and a proposed station is to be considered by the Commission only when it bears "upon the ability of the applicant adequately to serve his public"; i. e., when it shows that the applicant, and not merely the existing station, will either "go under" or "be compelled to render inadequate service."[2] Appellant alleges nothing of this sort here. It does not even remotely suggest that Meyer, for any reason whatever, lacks the ability adequately to serve his public.

If it did so suggest, the most generous interpretation that could even then be placed upon appellant's allegations, apart from the immaterial allegation of injury to appellant, would be this: after the hearing on Meyer's application, but before the license was granted to him, the Commission granted additional full-time licenses in the same city, and it did not thereafter hold a rehearing and reconsider Meyer's ability to serve his public. But we have no reason to assume that the Commission denied appellant's petition for rehearing without giving proper consideration to this matter. The statute expressly leaves the granting of rehearings to the discretion of the Commission.[3] It cannot be required to put aside its other duties and hold a rehearing whenever a new fact arises which might conceivably lead to a new conclusion.

In the Sanders case the Court said further: "The broadcasting field is open to anyone, provided there be an available frequency over which he can broadcast without interference to others, if he shows his competency, the adequacy of his equipment, and financial ability to make good use of the assigned channel."[4] This is as much as to say that licenses should be denied only because of interference, incompetence, inadequate equipment, or financial inability. Appellant charges none of these things against Meyer. It follows that the appeal raises no "relevant question of law," i. e., no question which, if it were answered in appellant's favor, would require revocation or reconsideration of Meyer's license. Appellant alleges that the Commission made findings on various subjects which are not supported by the record, but these allegations are irrelevant, since they do not touch the questions on which the validity of Meyer's license depends. Even if they did touch those questions they could not withstand a motion to dismiss, since appellant has not set forth the supposed errors specifically.[5]

As the appeal cannot succeed, it should be dismissed.[6] "It would merely serve the purpose of delay to allow the case to remain on our docket until it shall be reached * * * and then affirmed."[7]

[1] Federal Communications Commission v. Sanders Brothers Radio Station, 309 U.S. 470, 477, 60 S.Ct. 693, 698, 84 L.Ed. 869.

[2] Federal Communications Commission v. Sanders Brothers Radio Station, 309 U.S. 470, 476, 60 S.Ct. 693, 698, 84 L. Ed. 869.

[3] U.S.C. tit. 47, § 405, 47 U.S.C.A. § 405.

[4] Federal Communications Commission v. Sanders Brothers Radio Station, 309 U.S. 470, 475, 60 S.Ct. 693, 697, 84 L.Ed. 869.

[5] Stuart v. Federal Communications Commission, 70 App.D.C. 265, 105 F.2d 788.

[6] Steele v. Culver, 211 U.S. 26, 29 S. Ct. 9, 53 L.Ed. 74; Pennsylvania Company v. Donat, 239 U.S. 50, 36 S.Ct. 4, 60 L.Ed. 139; Sancho, Treasurer, v. Acevedo, 1 Cir., 93 F.2d 331.

[7] Robertson v. Wilkinson, 5 Cir., 10 F. 2d 311, 312.