VALLEY TELECASTING CO., Inc., Appellant,

v.

FEDERAL COMMUNICATIONS COMMISSION, Appellee,

Tele-Broadcasters of California, Inc., Intervenor.

No. 18092.

United States Court of Appeals District of Columbia Circuit.

Argued Feb. 10, 1964.

Decided May 22, 1964.

Mr. Reed Miller, with whom Mr. Paul A. Porter, Washington, D. C., was on the brief, for appellant.

Mr. Daniel R. Ohlbaum, Associate General Counsel, Federal Communications Commission, with whom Messrs. Max D. Paglin, General Counsel at the time the brief was filed, and Howard Jay Braun, Counsel, Federal Communications Commission, were on the brief, for appellee. Mr. Henry Geller, General Counsel, and Mrs. Ruth V. Reel and Mr. Joel H. Levy, Counsel, Federal Communications Commission, also entered appearances for appellee.

Messrs. Leonard H. Marks, Stanley B. Cohen and Roy F. Perkins, Jr., Washington, D. C., were on the brief, for intervenor.

Before BAZELON, Chief Judge, and WRIGHT and McGOWAN, Circuit Judges.

McGOWAN, Circuit Judge:

This appeal is from an order of the Federal Communications Commission dismissing, without an evidentiary hearing, appellant's petition for rehearing. The petition was filed after the Commission had granted intervenor a permit to construct new facilities which would allegedly be competitive with appellant. The issues raised concern the extent to which an existing licensee is entitled to an evidentiary hearing, when it alleges such competition but enters its objection for the first time in a post-grant pleading. This court has recently had occasion to deal with this problem in a closely-related context. Springfield Television Broadcasting Corp. v. F.C.C., 117 U.S.App.D.C. 214, 328 F.2d 186 (1964). What was there said is largely dispositive

of this case, but we think it desirable to consider the issues presented by this appeal in the light of the particular facts involved. As in *Springfield,* we affirm the Commission's order.

I

The propriety of the Commission's action in this case is to be appraised in its statutory setting, and especially against the background of the developing Congressional purposes in this area. For many years the Federal Communications Act (48 Stat. 1064 (1934), as amended, 47 U.S.C. § 151 *et seq.*) made express provision for the filing of objections to new licensing authority only after the initial grant. Before 1960, Section 309 (c) embodied a specific post-grant procedure for protecting grants of authority made without a hearing; and, although a pre-grant effort to resist the new application would presumably be entertained by the Commission, the failure of the Act to provide, in terms, for this possibility inevitably resulted in the practice of bringing forward objections after the Commission had determined that the authority sought accorded with the public interest, convenience, and necessity.

The deficiencies of such a procedure in terms of the rational and efficient functioning of the administrative process are obvious. Congress sought to remedy this situation in 1960 by repealing Section 309(c) and enacting new Section 309(d), which, for the first time, created machinery for the voicing of objections before, rather than after, the grant of the authority in question. 74 Stat. 890

(1960). Under that provision any one having an interest may file a petition to deny the application prior to the grant of an application without hearing or prior to the commencement of hearing on such application. Depending upon the substantiality and materiality of the matters asserted in such petition, the Commission may grant the application with or without hearing.

Existing side by side with Section 309 (d) is a wholly separate procedure, which has obtained from the inception of the Act, for seeking rehearing of any Commission order. Section 405 provides that any person, whether or not a party to the proceeding, aggrieved or adversely affected by any Commission action, may petition for rehearing of such action. This section expressly provides that the Commission has discretion to grant such a rehearing "if sufficient reason therefor be made to appear"; and also states that rehearings thereunder "shall be governed by such general rules as the Commission may establish, except that no evidence other than newly discovered evidence, evidence which has become available only since the original taking of evidence, or evidence which the Commission * * * believes should have been taken in the original proceeding shall be taken on any rehearing." The Commission has in fact issued regulations relating to reconsideration under this section of the Act, and the pertinent ones for our purposes are set forth in the margin.[1] In the interest of orderly procedure, they establish certain standards which are to govern the granting of petitions filed under Sec-

1. Rules and Regulations of the Federal Communications Commission Section 1.-84(b), 47 CFR 1.84(b) (1963 Supp.) (renumbered on November 18, 1963, as Section 1.106(b); see 28 Fed.Reg. 12422):
"Except where the Commission has denied an application for review without specifying reasons therefor, any party to the proceeding, or any other person aggrieved or whose interests are adversely affected by any action taken by the Commission or by the designated authority, may file a petition requesting reconsideration of the action taken. If

the petition is filed by a person who is not a party to the proceeding, it shall state with particularity the manner in which he is aggrieved or his interests are adversely affected by the action taken, and shall show good reason why it was not possible for him to participate in the earlier stages of the proceeding."
Section 1.84(c), 47 CFR 1.84(c) (1963 Supp.) (renumbered on November 18, 1963, as Section 1.106(c); see 28 Fed. Reg. 12422):
"A petition for reconsideration which relies on facts which have not previously been presented to the Commission or to

tion 405. These standards are designed to accommodate the public interest in the unusual case. They demand either that a good reason be given why a pre-grant opposition was not utilized or a pleading of facts which, if shown to be true, clearly point to an injury to the public sufficient to outweigh considerations of administrative orderliness. Thus, these standards have no direct relationship to pleading standards governing pre-grant petitions.

That the aim of these regulations is a legitimate one and well within the range of Congressional contemplation is clear from our opinion in *Springfield.*[2] There Judge Wright, speaking for the court, said:

"Congress, in amending Section 309 of the Act, obviously intended that oppositions to applications to grant construction permits should be filed before the grant, rather than after, as in the prior procedure. In reporting this amendment, the House Committee on Interstate and Foreign Commerce stated:

"'* * * The committee wishes to make clear that, in any situation where a petition to deny could have been filed by a party in interest prior to grant, the normal standards with respect to petitions for rehearing will apply, so that (1) no matter may be raised in a petition for rehearing which could have been raised with reasonable diligence by a petition to deny, and (2) any matter that was raised in a petition to deny and disposed of by the Commission need not be considered or dis-

the designated authority, as the case may be, will be granted only under the following circumstances:
"(1) The facts relied on relate to events which have occurred or circumstances which have changed since the last opportunity to present such matters;
"(2) The facts relied on were unknown to petitioner until after his last opportunity to present such matters, and he could not through the exercise

cussed in detail if it is raised again.'

Thus, while in amending Section 309 Congress did not provide for a mandatory pre-grant procedure, it fully anticipated that under the amendment this would be the normal procedure, and that when a party for the first time appears in the proceeding with a petition for reconsideration, he should show why he has withheld the facts, or was unable in season to obtain the facts, on which he relies. Certainly '[w]e cannot allow the appellant to sit back and hope that a decision will be in its favor, and then, when it isn't, to parry with an offer of more evidence. No judging process in any branch of government could operate efficiently or accurately if such a procedure were allowed.' Colorado Radio Corp. v. Federal Communications Com'n, 73 App.D.C. 225, 227, 118 F.2d 24, 26 (1941)."

Congress clearly recognized that sound regulation has procedural as well as substantive elements, and that "the public interest, convenience, and necessity" comprehends both. Orderliness, expedition, and finality in the adjudicating process are appropriate weights in the scale, as reflecting a public policy which has authentic claims of its own. We examine, against this background, the facts giving rise to this appeal.

## II

The petitioner, Valley Telecasting Company, owns and operates television station KIVA on Channel 11 in Yuma, Arizona.[3] On July 5, 1962, an applicant

of ordinary diligence have learned of the facts in question prior to such opportunity; or
"(3) The Commission or the designated authority determines that consideration of the facts relied on is required in the public interest."

2. 328 F.2d at 188–189.

3. The record shows also that Valley is in the business of owning and operating community antenna television systems in

known as Tele-Broadcasters sought authority to build a new television station on Channel 7 in El Centro, California. Two months later another applicant, KXO–TV, requested the same authority. This conflict was eliminated when, on November 5, 1962, the first application was amended to substitute Channel 9 for Channel 7. The applications elicited no objections from any quarter; and, after examining them, the Commission granted them without hearing on April 10, 1963.

On the following May 9, Valley came into the matter for the first time by filing petitions for reconsideration of the April 10 grants.[4] It asked the Commission to hold an evidentiary hearing on the issues raised by its allegations, which generally centered around the ability of the Yuma-El Centro area to support any new television operations whatever. Although Valley made a number of allegations responsive to the requirement in the Commission's Rule 1.84(b) (renumbered to 1.106(b)) that a non-party filing a petition for reconsideration state "with particularity the matter in which * * * his interests are adversely affected," the petitions ignored the accompanying requirements that they "show good reason why it was not possible for [petitioner] to participate in the earlier stages of the proceeding." Similarly, with respect to the evidentiary rules set forth in Rule 1.84(c) (renumbered to 1.106(c)), there was no effort by petitioner to bring itself within either subparagraph (1) or (2), i. e., facts arising since the last opportunity to present them or later discovered, without fault, for the first time. Valley urged, rather, that the facts alleged were so compelling that their consideration is, within the meaning of subparagraph (3), required "in the public interest."

The Commission, after considering the petitions, papers filed in opposition thereto by the new licensees, and replies by petitioner, denied the petitions. It noted that Valley had not exercised its right under Section 309(d) to file a petition to deny the applications and to present its objections to them in advance of action by the Commission. It noted further that Valley had made no effort to show "good reason" under the applicable Rule why this had not been done; and, from the pleadings before it, the Commission found no such reason to exist. Lastly, the Commission found the factual assertions of Valley insufficient to require, within the meaning of Rule 1.84(c) (3), a hearing in the public interest.

### III

The argument pressed upon this appeal by Valley essentially is that, whatever its sins in terms of timeliness, the Commission's primary function is to safeguard the public interest and not to punish delinquency. Since the Commission has, however dilatorily, been placed on notice of the injury to the public interest inherent in the grant of the two new applications, it is asserted that the Commission must now set the matter down for hearing and re-examine its earlier action in the light of the evidence Valley proposes to adduce. The injury to the public is said to lie in the inevitable destruction or degradation of Valley's existing service by reason of the incapacity of the market to support more than one station. Valley points to our holding in, Carroll Broadcasting Co. v. F. C. C., 103 U.S.App.D.C. 346, 258 F.2d 440 (1958), as making this kind of injury the occasion for a public hearing by the Commission. In *Carroll* we did hold that an existing licensee is entitled to the opportunity to present proof that the entry of a new competitor would, by reason of the leanness of the available market, raise the spectre of destroying or damaging the present service in the area, resulting in an injury to the public. But

Yuma, and in the California Imperial Valley communities of El Centro, Brawley, Calexico, and Holtville.

4. At the same time Valley asked that the applications be consolidated with each other and with another pending applica-

tion for the assignment of a recently-issued construction permit for a new television station, KBLU–TV, in Yuma. Although Valley did not oppose the issuance of that license, it did petition to deny the assignment application.

we are not here concerned with Valley's general right to a hearing. Nor are we concerned with whether Valley would have been entitled to a hearing on the economic issue had it intervened before the grant. We are, rather, concerned with what the Commission may require of post-grant petitions before it must afford a public hearing and engage in a lengthy re-evaluation of the public interest determination, which it has already once made. And we are concerned with whether the Commission has abused its discretion in concluding that this petition was not sufficient.

As we have already stated, and as we held in *Springfield*, the rules and standards used by the Commission are reasonable and well within the Congressional mandate. Moreover, we cannot, on this record, say that there was an abuse of discretion in the application of these rules. In stating this conclusion, we do not need to speculate as to what the Commission would or should have done if this issue had been tendered to it by a pre-grant petition to deny under Section 309(d), or had the Commission treated this as a pre-grant petition. We think, however, that Congress has manifested unmistakably a purpose to advance a policy of finality in administrative litigation. The Commission, as the instrument of that as well as of the other policies embodied in the Act, is authorized to proceed with due regard for all. This may on occasion be a task of considerable difficulty, calling for discriminating judgments of the most exacting nature. But these are committed in the first instance to the Commission, and our function in reviewing them is understandably a limited one.

█ We do not consider that the Commission here denied Valley's petition solely because, in the matter of timeliness, it was out of keeping with regulations validly promulgated under a statute not un-

concerned with timeliness. We do consider that the Commission measured Valley's allegations of injury to the public interest by a more exacting standard than might have been appropriate at an earlier stage in the proceeding. This we think it was entitled, if indeed not required, to do.

█ In leaving the Commission's order undisturbed, we do not think it necessary to repeat the process of detailed analysis which led to the Commission's conclusion. We note, however, some matters of obvious relevance. Valley's service area extended from its home location in Yuma, Arizona, into California's Imperial Valley where, fifty miles from Yuma, El Centro is located. Valley was not subject to competition from any other TV stations, either directly or indirectly, since Valley was the only licensed station in the area and it also owned the community antenna television systems. Valley's fundamental claim was that its California sales were essential to its continued ability to exist—an ability thrown in question by substantial operating losses in the early years of its life. Its own showing, however, was that, although more latterly it had been operating on an increasingly profitable basis, this trend coincided with one of declining California revenues relative to those derived from Arizona. This appears from information supplied by Valley in respect of its fiscal years ending in March of 1960, 1961, and 1962. It did not submit figures for the year ending March 31, 1963, although presumably these were available. Neither did its figures include those relating to the results of the community antenna television systems owned and operated by it throughout the service area in controversy here. In short, we cannot say that these post-grant pleadings clearly require a hearing to avoid the possibility of a serious injury to the public.

Affirmed.