CONTINENTAL BROADCASTING, INC.,
Appellant,

v.

FEDERAL COMMUNICATIONS
COMMISSION.

No. 23099.

United States Court of Appeals,
District of Columbia Circuit.

Argued April 13, 1970.

Decided Jan. 5, 1971.

Petition for Rehearing Denied
Feb. 10, 1971.

Mr. Leonard H. Marks, Washington, D. C., with whom Messrs. Paul Dobin and Martin J. Gaynes, Washington, D. C., were on the brief, for appellant.

Mr. D. Biard MacGuineas, Counsel, Federal Communications Commission, with whom Messrs. Henry Geller, General Counsel, and John H. Conlin, Associate General Counsel, Federal Communications Commission, were on the brief, for appellee. Mrs. Lenore G. Ehrig, Counsel, Federal Communications Commission, also entered an appearance for appellee.

Before BAZELON, Chief Judge, WILBUR K. MILLER, Senior Circuit Judge, and ROBB, Circuit Judge.

PER CURIAM:

This is an appeal, under 47 U.S.C. § 402(b) (2), from orders of the Federal Communications Commission denying the application for renewal of license of station WNJR, Newark, New Jersey. The license for station WNJR is held by Continental Broadcasting, Inc., a wholly

owned subsidiary of Rollins, Inc. The home office of the company is in Wilmington, Delaware. The license was last renewed on February 8, 1961.

In 1963 and 1964 the Commission and its staff investigated the operation of WNJR. The investigation related to alleged derelictions of the station in failing to keep proper program logs and in failing to file with the Commission time brokerage contracts, as required by the Commission rules. (47 C.F.R. §§ 1.-613(c), 73.111, 73.112 (1970)). In particular the investigation focused on a program known as "Celebrity Time" which was broadcast over WNJR Monday through Saturday, from 11:00 P.M. to midnight, from the fall of 1957 until March 1963. On this program "rock and roll" records were played, interspersed with spot advertisements and occasional interviews by a "disc jockey" with "guest celebrities". "Celebrity Time" was produced by an independent advertising agency known as Celebrity Consultants.

Following its investigation the Commission on June 10, 1965 designated WNJR's renewal application for evidentiary hearing on the following issues:

"1. To determine whether in its written response to the Commission's notice of apparent liability or in its oral statements to the Commission's staff the applicant misrepresented facts to the Commission and/or was lacking in candor;*

"2. To determine whether the applicant falsely represented to the Commission or its staff that the 139 'contracts' submitted to the Commission's staff during the course of an investigation of WNJR were, in fact, the actual documents which the applicant allegedly required Celebrity Consultants to file with WNJR on behalf of each sponsor who advertised during 'Celebrity Time'; or whether such 'contracts' were falsified in order to conceal or misrepresent the actual facts with respect to the relationship which existed during the period of the latest renewal and up to the present, between the applicant, its employees and Celebrity Consultants.

"3. To determine whether the principals of the applicant have exercised adequate control or supervision over the operation of WNJR in a manner consistent with the applicant's responsibility during the period of the applicant's most recent license renewal [on February 8, 1961] and up to the present; [footnote omitted]

"4. To determine whether the applicant operated its station contrary to and/or inconsistent with the provisions of section 317(a) (1) and (c) of the Communications Act and sections 73.111, 73.112, and 73.119 of the Commission's rules [pertaining to sponsorship identification and maintenance of program logs];

"5. To determine whether the applicant failed to file certain agreements regarding the sale of time periods to time brokers in violation of section 1.-613(c) of the Commission's rules;

"6. To determine whether, in light of the evidence adduced under the foregoing issues, the applicant has reflected the necessary qualifications to continue to be the licensee of station WNJR;

"7. To determine whether a grant of the above-captioned application would serve the public interest, convenience, and necessity."

After lengthy hearings reported in somewhat over 6800 pages of transcript the examiner filed his initial decision.

---

* A notice of apparent liability for forfeiture in the amount of $1,000, based on allegation of failure to file copies of a time brokerage contract with the Commission within 30 days of execution thereof in violation of sec. 1.613(c) of the rules, was transmitted to the licensee of station WNJR on Jan. 22, 1964. The licensee filed a response and opposition to the notice on Mar. 16, 1964. By a letter dated June 24, 1964, Continental withdrew its response and opposition and also submitted a check in full payment of the forfeiture.

The decision occupies 113 pages in the printed record; 83 pages are devoted to detailed findings of fact. The examiner found and concluded that (1) during the investigation of WNJR by the Commission's staff the station manager had submitted to the staff 139 spurious documents which he represented to be genuine contracts for advertising on the Celebrity Time program; (2) these documents had been prepared at the direction of the manager in order to conceal facts material to the investigation; (3) over a period of many months WNJR had failed to maintain proper and accurate program logs and the licensee had been aware of this failure; (4) the licensee had failed to file time brokerage contracts with the Commission, in violation of the Commission's rules; and (5) the licensee's principals had failed to exercise adequate control or supervision over the station in a manner consistent with the licensee's responsibility. Summarizing his findings the examiner referred to station WNJR as an "Augean stable".

The examiner found, however, that the principal officers of the licensee had not been guilty of knowing participation in the misrepresentations and misconduct of their station manager, that they had manifested an interest in and concern for the proper conduct of the station's affairs, and that they had "tardily acted to clear the Augean stable". Accordingly, the examiner recommended that the station's license be renewed for a one-year "probationary" period rather than the normal three-year term.

Continental filed no exception to the examiner's findings and conclusions. The Commission's broadcast bureau did file exceptions, urging that the application for renewal be denied.

After oral argument the Commission in its decision adopted the conclusions of the hearing examiner with respect to the

misconduct and fraudulent acts of the station manager. The Commission concluded further "that the manager's gross misconduct and fraud on the Commission must be imputed to the licensee because of its failure to exercise adequate control and supervision over the management and operation of WNJR consistent with its responsibilities as a licensee." (15 F.C.C.2d at 123). Finally, the Commission concluded:

> "The facts as found in this case are irreconcilable with a public interest finding. We have carefully examined the entire record in this proceeding, and we are unable to find any mitigating circumstances which would justify a grant of a renewal of license even for a period of 1 year. While nonrenewal of the license is a severe sanction, we have reached this decision only after a thorough consideration of the entire fact situation. See FCC v. WOKO, Inc., 329 U.S. 223 [67 S.Ct. 213, 91 L.Ed. 204] (1946)."

15 F.C.C.2d at 131.

The application for renewal of license was denied.

Continental filed a petition for reconsideration of the Commission's decision, requesting (1) that the Commission adopt the recommendation of the hearing examiner that the license be renewed for one year, or in the alternative (2) that the record be reopened to consider information bearing on the performance of station WNJR. The petition was denied.[1]

■ Since the examiner's findings of misconduct and fraud, which were adopted by the Commission, are not challenged by Continental, it is unnecessary to trace the threads of the tangled web of facts and circumstances which the examiner described in his decision. Given these findings our only task is "to see whether the Commission's judgment, based on the record as a whole, is rea-

1. See the Examiner's Initial Decision, 15 F.C.C.2d 133–246 (1967); the Commission's Decision, 15 F.C.C.2d 120–132 (1968); the Commission's Memorandum Opinion and Order denying petition for reconsideration and rehearing, 17 F.C.C. 2d 485–490 (1969).

sonable and within its proper discretion." Kidd v. F.C.C., 112 U.S.App.D.C. 288, 302 F.2d 873 (1962). *See also* Lorain Journal Company v. F.C.C., 122 U.S.App.D.C. 127, 351 F.2d 824 (1965), cert. denied, W.W.I.Z., Inc. v. F.C.C., 383 U.S. 967, 86 S.Ct. 1272, 16 L.Ed.2d 308 (1966); KWK Radio, Inc. v. F.C.C., 119 U.S.App.D.C. 144, 337 F.2d 540 (1964), cert. denied, 380 U.S. 910, 85 S.Ct. 897, 13 L.Ed.2d 798 (1965). As the Supreme Court put it in F.C.C. v. WOKO, Inc., 329 U.S. 223, 229, 67 S.Ct. 213, 216, 91 L. Ed. 204 (1946), " * * * it is the Commission, not the courts, which must be satisfied that the public interest will be served by renewing the license. And the fact that we might not have made the same determination on the same facts does not warrant a substitution of judicial for administrative discretion since Congress has confided the problem to the latter." Viewing the record in this light we think the Commission acted reasonably and within its discretion in finding that renewal of Continental's license would not be in the public interest.

Continental attacks the Commission's decision on several grounds. First, it argues that the Commission acted arbitrarily by imposing the "ultimate sanction" of refusal to renew the license. We are told that in comparable cases the Commission has applied milder sanctions by way of fines or short-term licenses; and it follows, says Continental, that the Commission in this case has abused its discretion by ignoring its own standards. We have made it plain in the past, however, that "the choice of remedies and sanctions is a matter wherein the Commission has broad discretion." Lorain Journal Company v. F.C.C., 122 U.S.App.D.C. 127, 134, 351 F.2d 824, 831 (1965), cert. denied, W.W.I.Z., Inc. v. F.C.C., 383 U.S. 967, 86 S.Ct. 1272, 16 L.Ed.2d 308 (1966). Here the Commission has exercised its discretion on the basis of undisputed facts. As the Supreme Court said in the *WOKO* case, 329 U.S. 223, 228, 67 S.Ct. 213, 216, 91 L.Ed. 204 (1946), "we cannot say that the Commission is bound by anything

that appears before us to deal with all cases at all times as it has dealt with some that seem comparable."

In support of its contention that the Commission has arbitrarily invoked against station WNJR a standard different from that applied to other licensees, Continental cites Melody Music, Inc. v. F.C.C., 120 U.S.App.D.C. 241, 345 F.2d 730 (1965). In that case the Commission considered two renewal applications at virtually the same time. In each case the Commission found that there had been misconduct in broadcasting a deceptive television quiz program; yet one applicant was held disqualified and the other was not. We ordered the Commission to explain its reasons for distinguishing between the two applicants. We think that on its facts the *Melody Music* case is not in point here, for here there is no close parallel or relationship between the facts and the issues presented and any other case. On the other hand, denial of an application for renewal of a broadcast license because of misrepresentation to the Commission is by no means a novel sanction. *See, e.g.,* F.C.C. v. WOKO, 329 U.S. 223, 67 S.Ct. 213, 91 L.Ed. 204 (1946); Immaculate Conception Church of Los Angeles v. F.C.C., 116 U.S.App.D.C. 73, 320 F.2d 795, cert. denied, 375 U.S. 904, 84 S.Ct. 196, 11 L.Ed.2d 145 (1963); KWK Radio, Inc. v. F.C.C., 119 U.S. App.D.C. 144, 337 F.2d 540 (1964), cert. denied, 380 U.S. 910, 85 S.Ct. 897, 13 L.Ed.2d 798 (1965); Lorain Journal Company v. F.C.C., 122 U.S.App.D.C. 127, 351 F.2d 824 (1965), cert. denied, W.W.I.Z., Inc. v. F.C.C., 383 U.S. 967, 86 S.Ct. 1272, 16 L.Ed.2d 308 (1966).

Continental argues further that the Commission erred by failing to give adequate weight to the licensee's "corrective measures" and "rehabilitative steps to correct deficiencies in the operation of station WNJR, when those deficiencies were discovered." The record discloses, however, that the Commission did carefully consider the examiner's finding (15 F.C.C.2d at 234–236) that the licensee had instituted a number of control

procedures for its stations. (See Commission Decision, 15 F.C.C.2d at 126, 127; Commission's Memorandum Opinion and Order, 17 F.C.C.2d at 486, 487). The Commission in its decision pointed out that the examiner had concluded, and Continental had taken no exception to his conclusion, that the licensee did not exercise adequate control or supervision over the operation of station WNJR in a manner consistent with its licensee responsibilities. The Commission thought that such a lack of supervision and control demonstrated intolerable irresponsibility. We cannot say that the Commission's conclusion is without rational support in the record.

 Finally, Continental argues that in weighing the qualifications of station WNJR the Commission improperly failed to consider the station's program performance. A short answer to this contention is that the Commission "need not consider the public service rendered by a station where the licensee is disqualified by its attempts to deceive the Commission." Immaculate Conception Church of Los Angeles v. F.C.C., 116 U.S.App.D.C. 73, 75, 320 F.2d 795, 797, cert. denied, 375 U.S. 904, 84 S.Ct. 196, 11 L.Ed.2d 145 (1963). Moreover, the record discloses that Continental made no offer of evidence of programming until after the Commission had decided the case; on the contrary, in response to a question from the examiner, counsel for WNJR stated that he did not intend to make any "program showing" by way of mitigation, that the "question of actual programming was not in issue." See 17 F.C.C.2d at 488. The matter of programming was raised for the first time when Continental moved to reopen the record after the Commission's decision. The Commission was justified in concluding that the proffer of evidence came too late. See Colorado Radio Corp. v. F.C.C., 73 App.D.C. 225, 118 F.2d 24 (1941).

The decision of the Commission is affirmed.