BUTLER OAK TAVERN, A CORPORATION, APPELLANT, v. DIVISION OF ALCOHOLIC BEVERAGE CONTROL, DEPARTMENT OF LAW AND PUBLIC SAFETY, STATE OF NEW JERSEY, AND WILLIAM HOWE DAVIS, DIRECTOR OF SAID DIVISION, RESPONDENTS.

Argued December 5, 1955—Decided January 9, 1956.

374

*Mr. Abraham I. Mayer* argued the cause for the appellant (*Messrs. Mayer and Mayer,* attorneys).

*Mr. Samuel B. Helfand,* Deputy Attorney-General, argued the cause for the respondents (*Mr. Grover C. Richman, Jr.,* Attorney-General of New Jersey, attorney).

The opinion of the court was delivered by

BURLING, J. The appellant's retail liquor license was revoked by the Director of the Division of Alcoholic Beverage Control, and the Superior Court, Appellate Division, affirmed the administrative action. Appellant has sought to invoke this court's jurisdiction by alleging state action violative of constitutional due process and equal protection. 1947 *Constitution, Art.* VI, *Sec.* V, *par.* 1(*a*); *R. R.* 1:2–1(*a*).

The facts are not in dispute. Butler Oak Tavern, Inc., is a corporate body and prior to March 14, 1955 was engaged in the retail sale of intoxicating beverages pursuant to a plenary retail consumption license issued by the governing body of the Borough of Butler, Morris County, New Jersey. Joseph Dilzer and his wife own 48 of the 50 shares of corporate stock. On December 18, 1954, Dilzer, the dominant figure in this litigation, sold 24 bottles of intoxicating liquors at a price less than that published as a minimum resale price by the Division of Alcoholic Beverage Control. See *R. S.* 33:1–23.1. Twelve of the bottles were purchased by a customer; the other dozen by representatives of the Division who subsequently revealed their identity. Charges were prepared and dispatched to Butler Oak Tavern and a hearing scheduled. In apparent disregard of the events of December 18, a similar violation took place three days later. The appellant pleaded not guilty to the three charges but later changed the plea to *non vult*, and, pursuant to counsel's request, the Director granted oral argument upon the question of penalty. Based upon the three charges alone the Director questioned whether Dilzer was a "fit person to be entrusted with the privilege of a liquor license," but all doubt was apparently removed upon a perusal of prior records of violations involving Dilzer:

October 1940—curfew infraction—5 days suspension
September 1943—refilling bottles—20 days suspension
February 1947—minimum price violation—20 days suspension
(5 days off for confessory plea)
July 1949—Minimum price violation—25 days suspension
(5 days off for confessory plea)

Accordingly, the license was revoked effective March 14, 1955, and the determination of the Director was affirmed on appeal to the Superior Court, Appellate Division. 36 *N. J. Super.* 512 (*App. Div.* 1955).

There are two dominant questions involved which require our determination: (1) Did the Director violate the principle of exclusiveness of the record? (2) Was appellant deprived of equal protection of the law by the imposition of a penalty allegedly greater in degree than that imposed against others under similar circumstances? Several subsidiary questions are disposed of within these two categories.

## QUESTION ONE

Appellant alleges the Director committed error in considering prior violations of Dilzer, its *alter ego,* upon the *quantum* of penalty to be imposed. It is argued that elemental rules of fair play require the prerequisite of alleging previous violations in the charges. *Cf. N. J. S.* 2A:85–13. The argument overlooks the fact that appellant's license application admits the prior violations. *State v. Rowe,* 116 *N. J. L.* 48 (*Sup. Ct.* 1935), affirmed 122 *N. J. L.* 466 (*E. & A.* 1939). Proceedings taken pursuant to *R. S.* 33:1–31 to revoke or suspend an alcoholic beverage license are civil and disciplinary in nature, *The Panda v. Driscoll,* 135 *N. J. L.* 164, 165 (*E. & A.* 1947), *In re Schneider,* 12 *N. J. Super.* 449, 454 (*App. Div.* 1951) and the provisions of *N. J. S.* 2A:85–13 concerning the criminal law are inapplicable. Appellant has shown no prejudice arising from a course of practice of general applicability which the Director has adopted in concluding the degree of penalty to be imposed. *Cf. White v. Parole Board of State,* 17 *N. J. Super.* 580 (*App. Div.* 1952).

In the course of stating his conclusions the Director made brief mention of the circumstances surrounding the violation of December 18 from which one might infer that Dilzer had hindered the agents of the Division in their investigation. See *R. S.* 33:1–35, as amended *L.* 1943, c. 37,

which enjoins such conduct. The source of the intimation does not appear but it was probably based upon a report submitted by the agent conducting the investigation. Appellant, assuming that the matter was an aggravating factor in the severity of the penalty, urges that it was incumbent upon the Division to make a separate specification in the charges to which it otherwise entered a plea of *non vult*. *Mazza v. Cavicchia*, 15 *N. J.* 498 (1954), is said to require this result. The *Mazza* case concerned the preliminary determination of the guilt or innocence of the licensee based upon matters *dehors* the record unknown to the alleged offender. This case is restricted to a consideration of the penalty to be imposed as pleas of *non vult* had been entered to the charges concerning illegal sales. The complete recital of the Director's conclusions negatives any finding that the alleged imputation of interference with departmental agents entered into the penalty determination. The following appears in the Director's conclusions:

"The mere recital of the aforesaid violations (the three present illegal sales) * * * raise (a) serious question as to whether Joseph Dilzer * * * is a fit person to be entrusted with the privileges of a liquor license * * * This becomes starkly clear when the previous record is considered." (Explanation supplied)

QUESTION TWO

The real substance of this appeal lies upon a charge of disparate treatment accorded the appellant, who characterizes the license revocation as harsh in its incidence and completely arbitrary and unjustified when placed into a context with disciplinary measures taken against other licensees for similar or more aggravated offenses. It is conceded by the appellant that it is within the power of the Director to effect a revocation of its license, *R. S.* 33:1–31, but the constitutional principle of equal protection is said to prohibit a divergence from a uniform pattern of action established by prior administrative determinations. Appellant has endeavored to substantiate this claim by incorporating into its

argument and appendix a resume of all decisions of the Director for 1954 and 1955 concerning minimum price violations and miscellaneous violations where the licensee has been guilty of prior offenses.

Several general observations may be deduced from the decisions encompassing the two-year span:

(1) A sale of a relatively minor quantity of liquor below minimum price has usually evoked a ten-day period of suspension, less five days for a confessory plea.

(2) Prior dissimilar violations are disregarded if occurring more than five years ago; prior similar violations are disregarded if occurring more than ten years ago.

(3) Similar price violations occurring within ten years of a present offense has warranted an additional suspension period of 5–10 days.

(4) Violations reflecting extreme moral turpitude and involving a prior record have caused varying periods of suspension to be imposed and revocation in two instances.

(5) In several instances the Director has given advance warning that certain abuses would be dealt with more severely in the future.

In view of the several patterns thus adverted to appellant's penalty would appear to be an exception to the generally accorded treatment. Two of Dilzer's previous dissimilar violations (curfew violation and refilling bottles) occurred more than five years ago, and ordinarily would not be considered; the other two prior similar offenses, one in 1947 and one in 1949, were price violations which in other cases have been subject to rather brief additional periods of suspension. For example, in Bulletin 1067, dated June 13, 1955, Item 4, the licensee pleaded *non vult* to a charge of price violation. Prior similar offenses in 1941 and 1943 were not considered in fixing the penalty under the ten-year similar-offense practice. A further price violation in 1947 was considered, but even this did not call forth the usual practice of doubling the penalty for the offense charged because it occurred more than five years previously. A 15-day suspension was imposed, with five days remitted for the plea

of *non vult*, a penalty different in kind from outright revocation. The divergent treatment is appellant's basic grievance.

██ The court below was satisfied that the cases cited by appellant "neither reach nor parallel the situation existing in the instant case," for they do not disclose "the aggravated circumstances present herein, nor the brazen recurrence of the identical violation after being caught 'redhanded,' nor the same previous record either in kind or degree." We are in accord with the thought that the subsequent violation of December 21 exhibited an utter disregard for the controls exercised over vendees of alcoholic beverages and properly brought into question the fitness of the appellant to continue its licensed operation. If nothing else were involved in this case there would be no basis for charging the Director with an abuse of discretion or constitutional infraction. The Director has the statutory authority to suspend or revoke liquor licenses for a *first* offense, *R. S.* 31:1–31, and his action in this regard works no deprivation of any inherent right to engage in the occupation thus curtailed. *Crowley v. Christensen,* 137 *U. S.* 86, 11 *S. Ct.* 13, 34 *L. Ed.* 620 (1890); *Meehan v. Board of Excise Commissioners,* 73 *N. J. L.* 382 (*Sup. Ct.* 1906), affirmed 75 *N. J. L.* 557 (*E. & A.* 1908). A license to sell intoxicating beverages is not a contract nor does it embody any property right. It is a temporary permit or privilege. *Mazza v. Cavicchia, supra,* 15 *N. J.,* at *page* 505.

██ Appellant's argument takes a different course. Relief is sought from administrative action alleged to be divorced from all patterns of uniformity designed to afford equal and impartial treatment of licensees similarly situated. It has sought to show an intentional discrimination in the administrative process. We are of the opinion that appellant has raised a constitutional issue which entitled it to an appeal of right to invoke this court's jurisdiction, 1947 *Constitution, Art.* VI, *Sec.* V, *par.* 1(*a*); *R. R.* 1:2–1(*a*); see *Camden County v. Pennsauken Sewerage Authority,* 15 *N. J.* 456 (1954). The Legislature has enjoined the Director to insure the "fair, impartial, stringent and comprehensive adminis-

tration" of the Alcoholic Beverage Control Law, *R. S.* 33:1–23, and so far as equal treatment is concerned, the Federal and State Constitutions would permit nothing less, *Duff v. Trenton Beverage Co.*, 4 *N. J.* 595 (1950).

Without discussing to any greater extent the many disciplinary cases which appellant has cited, for purposes of argument it may be conceded that appellant has been accorded a more severe penalty than is usually meted out to licensees with records of prior price violations and even of offenses more grievous in nature. Under such postulate, was appellant denied its right to equal protection under the 14th amendment of the Federal Constitution or *Art.* I, *par.* 5 of the State Constitution? We think not. The Director is not inalterably bound by any doctrine of *stare decisis* in the imposition of penalties. The liquor control laws and regulations must be administered in the light of changing conditions. Prior measures of enforcement may have failed their mark. Recurrent instances of particular violations must be dealt with accordingly. The penalty imposed upon appellant may reflect an administrative attitude that more stringent enforcement is necessary in the area of price control, especially where the instant violations are aggravated by prior similar offenses. If the brief of the respondents provides an *indicia*, the observation is appropriate. They have quoted the following statement from *Re C. I. Tarlowe, Inc., Bulletin* 436, *Item* 1, which is said to be equally applicable here.

"I see here in this business a continuity of deliberate and flagrant disregard of this [Division's price regulations] by persons who, by past and present behavior, show what amounts almost to an avowed purpose to defeat those regulations."

"Sound control dictates outright revocation as the only proper penalty in this case to instill throughout the trade a wholesome respect for these regulations."

The argument of appellant was similarly advocated by a radio broadcasting station in *Federal Communications Commission v. WOKO, Inc.*, 329 *U. S.* 223, 67 *S. Ct.* 213, 91 *L. Ed.* 204 (1946). WOKO had been denied a license

renewal by the Federal Communications Commission for misrepresentations made to the Commission concerning licensee's capital stock ownership. The United States Supreme Court, speaking through the late Justice Robert H. Jackson, addressed itself to the licensee's contention in the following words:

"Respondent complains that the present case constitutes a departure from the course which the Commission has taken in dealing with misstatements and applications in other cases. Much is made in argument of the fact that deceptions of this character have not been uncommon and it is claimed that they have not been dealt with so severely as in this case. *Cf. Re. Navarro Broadcasting Asso.,* 8 F. C. C. 198. But the very fact that temporizing and compromising with deception seemed not to discourage it, may have led the Commission to the drastic measures here taken to preserve the integrity of its own system of reports. The mild measures to others and the apparently unannounced change of policy are considerations appropriate for the Commission in determining whether its action in this case is too drastic, but we cannot say that the Commission is bound by anything that appears before us to deal with all cases at all times as it has dealt with some that seem comparable." 329 *U. S.,* at *pages* 227–228, 67 *S. Ct.,* at *pages* 215–216, 91 *L. Ed.,* at *page* 208.

■■■ *Cf. Courier Post Pub. Co. v. Federal Communications Commission,* 70 *App. D. C.* 80, 104 *F. 2d* 213 (*D. C. Cir.* 1939). Although the Director might have chosen to advise licensees that a more rigid enforcement policy was imminent, he was not required to do so. *Cf. Shawmut Ass'n v. Securities and Exchange Commission,* 146 *F. 2d* 791, 796 (1 *Cir.* 1945). Administrative agencies should not, however, allow their rule-making powers to lie idle when the exercise thereof may suffice to preclude burdens ofttimes arising from the retroactive effect of judicial and *quasi*-judicial determinations. See *Davis, Administrative Law,* 560, 561 (1951).

We are not free to assay the justification for the change in enforcement policy. *In re Plainfield-Union Water Co.,* 14 *N. J.* 296, 308 (1954); *Hickey v. Division of Alcoholic Beverage Control,* 31 *N. J. Super.* 114 (*App. Div.* 1954). The prerogative here is with the agency and not the courts. In reaching this conclusion we are mindful of the field of governmental control presented in this controversy.

 The sale and distribution of intoxicating beverages has long been subject to legislative control in this State and our courts have always accorded a liberal interpretation to statutory enactments and administrative rules designed for its effective regulation. The cases are legion which recognize this attitude. *X-L Liquors, Inc., v. Taylor*, 17 *N. J.* 444, 449 (1955) ; *Mazza v. Cavicchia*, 15 *N. J.* 498, 505 (1954) ; *Paul v. Gloucester County*, 50 *N. J. L.* 585, 595 (*E. & A.* 1888) ; *Eskridge v. Division of Alcoholic Beverage Control*, 30 *N. J. Super.* 472, 474–475 (*App. Div.* 1954) ; *In re Schneider*, 12 *N. J. Super.* 449, 455–456 (*App. Div.* 1951), are but a few.

Supervision over prices, as one phase of control, was initiated as early as 1738 by the Governor, Council and Assembly of the Province of New Jersey who were concerned lest the "true and original Design of Taverns, Inns and Ordinaries * * * for the entertaining and refreshing Mankind in a reasonable Manner" give way to the "Encouragement of Gaming, Tippling, Drunkenness, and other Vices so much of late practiced at such places." Judges of the Courts of General Quarter Sessions were empowered "to ascertain the rates and prices of the several liquors, meat, and entertainment for man." See *Allinson* 102, 105 (An Act for regulating Taverns, Ordinaries, Innkeepers and Retailers of strong Liquors—passed March 15, 1739), *Acts of the General Assembly of the Province of New Jersey.* Comparable legislation was enacted in 1768 (*Allinson* 302), 1797 (*Paterson's Laws of New Jersey* 235, 237–238) and in 1846 (*Nixon's Digest* 362, An Act concerning Inns and Taverns). The price control feature of the 1846 enactment (exercised by the judges of the Inferior Courts of Common Pleas) was repealed by *L.* 1864, *c.* 148, *p.* 236. (For historical aspects of liquor control see *Byse, Alcoholic Beverage Control Before Repeal*, 7 *Law and Contemporary Problems,* 544 (1940).

 In 1938 the Legislature enacted the present statute which seeks to impose a pattern of uniformity in the retail sales price of alcoholic beverages, *L.* 1938, *c.* 208. *R. S.*

33:1–23.1 vests discretion in the "commissioner" (now the Director of the Division of Alcoholic Beverage Control, *N. J. S. A.* 52:17B–16, 17) to prohibit the sale of alcoholic beverages in violation of any fair trade contract entered pursuant to *R. S.* 56:4–1 to 6 by rule or regulation. See *Gaine v. Burnett*, 122 *N. J. L.* 39 (*Sup. Ct.* 1939), affirmed per curiam 123 *N. J. L.* 317 (*E. & A.* 1939). Sales between distillers and wholesalers and retailers are likewise subject to control. *R. S.* 33:1–89, *R. S.* 33:1–93.1. The wisdom of price superintendence is not for us to decide. The Legislature has expressed the basis for the legislation in unmistakable terms via the preamble to *L.* 1938, *c.* 208:

"Whereas, alcoholic beverage licensees have been unduly stimulating the sale of alcoholic beverages by indiscriminate price cutting, resulting in price wars, and by excessive advertising of bargain values and cut prices; these practices are deemed detrimental to the proper operation of the liquor industry and contrary to the interests of temperance; the sale of alcoholic beverages is unusually susceptible to abuse, with resulting danger to the general public and should be strictly supervised and regulated to prevent undue stimulation of public demand for alcoholic beverages; therefore, * * *."

The court below, through Judge Mariano, stated:

"The flagrant disregard of the delicate balance of the price structure relating to alcoholic beverages requires stringent enforcement of the salutary regulations designed to insure stability in the sale of alcoholic beverages at retail. While isolated sales below minimum prices leave their limited mark upon the pricing system, and warrant license suspensions, the practice, as here, of the indiscriminate sale of alcoholic beverages at "cut rate" prices, if persisted in long enough, can only lead to the disruption of an orderly market and the evils that result therefrom."

See *Duff v. Trenton Beverage Co.*, 4 *N. J.* 595, 608 (1950). The statute as a whole is intended to be remedial of abuses inherent in liquor traffic, *R. S.* 33:1–73, and the discretion of the Director is sufficiently broad to accomplish the purpose intended. *Grant Lunch Corporation v. Driscoll*, 129 *N. J. L.* 408 (*Sup. Ct.* 1943), affirmed 130 *N. J. L.* 554 (*E. & A.* 1943), *certiorari* denied 320 *U. S.* 801, 64 *S. Ct.* 431, 88 *L. Ed.* 484 (1944); *Benedetti v. Board of Commis-*

*sioners of City of Trenton*, 35 *N. J. Super.* 30 (*App. Div.* 1955), *Mitchell v. Cavicchia*, 29 *N. J. Super.* 11 (*App. Div.* 1953). Rule 5 of Regulation 30 of the Division of Alcoholic Beverage Control was promulgated pursuant to *R. S.* 33:1–23.1 and *R. S.* 33:1–39. The appellant has thrice violated it in the present case. The Director had the authority to suspend or revoke its license, *R. S.* 33:1–31. The latter course was taken. Whether the administrative determination rests upon appellant's flagrant disregard in the subsequent violation of December 21 or in view of the prior record of violations coupled with a desire to bring about a more respectful adherence to the law and regulations, it is unassailable. Nor does appellant's corporate shell render it immune to attribution of Dilzer's former conduct. The philosophy of *R. S.* 33:1–25 and *R. S.* 33:1–31.1 is to the contrary.

The judgment is affirmed.

*For affirmance*—Chief Justice .VANDERBILT, and Justices HEHER, OLIPHANT, BURLING, JACOBS and BRENNAN—6.

*For reversal*—Justice WACHENFELD—1.