436 P.2d 797

Clyde REAVELEY, dba Reaveley Trucking Company, Plaintiff,

v.

PUBLIC SERVICE COMMISSION of Utah and Hal S. Bennett, Donald Hacking, and Donald T. Adams, Commissioners of the Public Service Commission of Utah; Link Trucking, Inc., and Uintah Freightways, Defendants.

No. 10909.

Supreme Court of Utah.

Jan. 22, 1968.

**238**

Lynn S. Richards, Lon Rodney Kump, Richards, Bird, Hart & Kump, Salt Lake City, for plaintiff.

Phil L. Hansen, Atty. Gen., H. Wright Volker, Asst. Atty. Gen., Wood Worsley, Skeen, Worsley, Snow & Christensen, William S. Richards, Gustin & Richards, Salt Lake City, for defendants.

ELLETT, Justice:

Two of the defendants, Link Trucking, Inc., hereinafter called Link, and Uintah Freightways, hereinafter referred to as Uintah, had certificates as common carriers to and from various points in the Uintah Basin. This region, sparsely populated, has no railroads and few highways leading into it.

Link's certificate provided that it could "operate as a common carrier by motor vehicle for the transportation of general commodities except acid and petroleum products, in bulk, and except commodities which by reason of their size, shape or weight require special equipment and special handling over regular and irregular routes as follows:" (Specific routes are here set out between the various points to be served.)

Uintah's certificate authorized it to "operate as a common carrier of property handling both freight and express in intrastate commerce, as follows:" (Specific routes are here set out between the various points to be served.)

The two defendant carriers filed a tariff providing a commodity rate for the transportation in bulk of cement, gilsonite, and salt. The plaintiff, Reaveley, contested the

right of Uintah and Link to transport cement in bulk but made no objection to their transporting gilsonite or salt in bulk. Reaveley has authority to transport cement in bulk and has special equipment for hauling it. Both Uintah and Link claim that their authority is broad enough to permit them to transport cement in bulk. The defendant Public Service Commission found that their certificates authorizing operation as a common carrier of "property" and of "general commodities" were broad enough to permit transportation of cement in bulk.

Reaveley claims that the Commission is bound by its prior holding, affirmed by this court in the case of Milne Truck Line, Inc. v. Public Service Commission, et al., 13 Utah 2d 72, 368 P.2d 590. In that matter Milne's certificate of authority authorized it to transport "commodities generally." It contemplated hauling petroleum products in bulk and filed a tariff of rates in regard thereto. Those carriers who already were hauling such products contested the right of Milne to haul petroleum products. The Public Service Commission found that the term "commodities generally" did not authorize the transportation of petroleum products; and because of that ruling in the Milne case, the plaintiff now says that the Commission cannot hold cement in bulk to be included under "property" or "general commodities."

All this court held in the Milne case was that the determination of the Public Service Commission was not unreasonable, arbitrary, or unsupported by the evidence. In fact, this court at page 73 of the Utah Reports, 368 P.2d at page 591, said:

> * * * It is possible that authority to transport "commodities generally" has a different meaning in one part of the country than it does in another. The scope of such authority might also vary from carrier to carrier due to different conditions existing at the time the certificate was issued. For these reasons this court cannot attempt to define "commodities generally" as it is used in all certificates and under all situations, when the only facts before it are those which are pertinent to the case at hand. The meaning of the term "commodities generally" must be ascertained from the particular facts of each case.

It thus is clear that this court did not intend to say that because the Public Service Commission found the transportation of petroleum products not to be included under Milne, that it must find cement would of necessity be excluded from the provisions of the certificates of Link and Uintah. In fact, it does not necessarily follow that this court would reverse the Commission if it should find, under another certificate of a carrier serving other areas, under the circumstances that the transportation of petroleum products would be included under the term "commodities generally." The Commission is best suited

to say what its orders mean, since it has the power to grant, amend, or refuse certificates, and its determination is final as to facts so long as there is competent evidence to justify the finding. Section 54–7–16, U.C.A.1953.

It seems appropriate that the Public Service Commission should be able to determine what, if anything, should be excluded from the terms "general commodities" and "property," and we should not complain if it makes its journey toward that end by taking one step at a time. The fact that it held that petroleum products were not included in one case does not give any basis for thinking it would also hold that cement in bulk would likewise be excluded. They are very dissimilar in characteristics. Gasoline is a liquid, highly volatile and explosive, while cement is more like salt and gilsonite. The Commission as finder of facts might also determine that corrosive acids be excluded and require a special vehicle for transportation thereof. It might properly require experts to handle explosives and so forth, but the determination it makes in these matters is not to be disturbed by this court where it is based upon evidence and is neither arbitrary nor unreasonable.

▪▪ The law does not require an administrative body to be bound by the rules of stare decisis as applied to courts. The general law is found in 73 C.J.S. Public Administrative Bodies and Procedure § 148, where it is stated:

The doctrine of stare decisis, discussed generally in Courts §§ 186–216, is not generally applicable to the decisions of administrative tribunals; nor does a prior administrative determination ordinarily preclude a subsequent one on the grounds of equitable estoppel. Accordingly, administrative bodies are not ordinarily bound by their prior determinations or the principles or policies on which they are based. * * *

In Courier Post Pub. Co. v. Federal Communications Commission, 70 App.D.C. 80, 104 F.2d 213, the defendant had not applied the same standards in determining whether to grant a permit to construct a new radio station which it had adopted and applied in other cases. The court at page 218 said:

The remaining assignment is that the Commission erred in refusing to apply herein the same standards adopted in similar cases decided by it. In support of this assignment, the appellant cites many Commission decisions in which a city as small as, or smaller than, Hannibal had been granted a local station. These cases show that, in the past, the Commission has definitely laid down a policy of granting permits for local stations to communities served with clear channel and regional stations, but having no local service. It is clear that in all

the cases cited lack of a local station was controlling in the determination of the Commission that under the direct provisions of the statute the rights of the citizens to enjoy local broadcasting privileges were being denied, and that public convenience, interest, or necessity would be better served by the granting of the permit for a local station. We cannot subscribe to appellant's theory that these cases are such as will control the action of the Commission. It is very difficult to find cases that square on the facts. In administering the law, the Commission must consider each case upon its individual grounds. The permit should be granted if it meets the statutory criterion of public convenience, interest or necessity, if not, it should be denied. In the instant case, it seems to us there has been a departure from the policy of the Commission expressed in the decided cases, but this is not a controlling factor upon the Commission. We must keep in mind that the findings of fact by the Commission in this case are conclusive if supported by substantial evidence, unless it clearly appears that they are arbitrary or capricious.

The case was reversed on other grounds not material here.

■ Certainly an administrative agency which has a duty to protect the public interest ought not be precluded from improving its collective mind should it find that a prior decision is not now in accordance with its present idea of what the public interest requires. This does not necessarily mean that we think the defendant Commission has changed its mind in this case.

■ The plaintiff makes one further assignment of error, claiming that the Public Service Commission failed to make findings to the effect that there was an abandonment of the right to haul cement in bulk, since no haul had ever been made by Link and only two had been made by Uintah. The evidence showed there were no other shipments ever tendered to either one of these defendants, and so the Commission was not compelled to find that there had been an abandonment. One might as well argue that a carrier could not haul a radio the first time it was offered because no other radio had ever been theretofore transported. Besides this, the matter of abandonment was not brought before the Public Service Commission, as is shown by its Finding of Fact No. 9:

> The Commission under 56–6–20 [sic 54–6–20] Utah Code Annotated, 1953 as amended, for good cause after notice and hearing may suspend, alter, amend or revoke any certificate, permit or license. The Statute is invoked by the Commission in the event of violations, dormancy or abandonment. These issues are not involved in this proceeding and the evidence would not support an amendment or an

alteration to the certificates of Link or Uintah on this basis.

We affirm the decision of the Commission. Link Trucking, Inc. and Uintah Freightways are to have their costs incurred herein.

CALLISTER, TUCKETT and HENRIOD, JJ., concur.

CROCKETT, C. J., concurs in the result.