**ILLINOIS COMMERCE COMMISSION et al., Plaintiffs,**

v.

**UNITED STATES of America et al., Defendants.**

**Civ. No. 4815.**

United States District Court, S. D. Illinois, S. D.

May 15, 1972.

William J. Scott, Atty. Gen., Peter A. Fasseas, Sp. Asst. Atty. Gen., Thomas Cassidy, Asst. Atty. Gen., Illinois Commerce Commission, Chicago, Ill., William E. Nelson, Hoopeston, Ill., Milo J. Fleming, Watseka, Ill., Keith E. Roberts, Chicago, Ill., Wendell W. Wright, Marion E. Wright, William A. Young, Danville, Ill., Gordon P. MacDougall, Washington, D. C., for plaintiffs.

Leibman, Williams, Bennett, Baird & Minow, Chicago, Ill., Brown, Hay & Stephens, Springfield, Ill., for National Railroad Passenger Corp.

Walker B. Comegys, Acting Asst. Atty. Gen., John H. D. Wigger, Atty., Dept. of Justice, Washington, D. C., Donald B. Mackay, U. S. Atty., Springfield, Ill., for United States of America.

Fritz R. Kahn, General Counsel, Hanford O'Hara, Atty., Interstate Commerce

Commission, Washington, D. C., for Interstate Commerce Commission.

Jenner & Block, Chicago, Ill., Giffin, Winning, Lindner, Newkirk & Cohen, James M. Winning, Springfield, Ill., for Louisville & Nashville Railroad Co.

Before SWYGERT, Chief Circuit Judge, POOS, Chief District Judge, and MORGAN, District Judge.

## OPINION AND ORDER

POOS, Chief District Judge.

This is an action to annul and set aside a report and order of the Interstate Commerce Commission which held that Trains Number 3 and 4 of the Louisville and Nashville Railroad ("Danville Flyer") were "intercity service" as defined in Section 102(5) of the Rail Passenger Service Act ("Amtrak Statute") 45 U.S.C., Sec. 502(5). The effect of this holding was that the termination of service on Trains 3 and 4 between Chicago and Danville, Illinois, was placed beyond the subject matter jurisdiction of the Interstate Commerce Commission pursuant to 45 U.S.C., Sec. 546(a) (3) and 561(a) (1). As a result of this determination the instant trains were omitted from the schedule of continued rail passenger lines promulgated by the Secretary of Transportation May 1, 1971.

The proceedings concerning the "Danville Flyer" began with the application of the Chicago and Eastern Illinois Railroad (C&EI) in 1966 with the Illinois Commerce Commission to discontinue operation of the "Danville Flyer". The application having been denied, the C&EI then applied to the Interstate Commerce Commission for discontinuance, but was again denied. Chicago & Eastern Illinois Railroad Company Discontinuance, 333 ICC 626 (1968).

The C&EI then instituted an action in the United States District Court at Chicago where a three-judge court set aside the Commission's report and remanded the cause for further proceedings. Chicago & Eastern Illinois Railroad Co. v. United States, 308 F.Supp. 645 (N.D.Ill.

1969). The United States took a direct appeal to the U. S. Supreme Court and probable jurisdiction was noted. 398 U. S. 957, 90 S.Ct. 2172, 26 L.Ed.2d 541 (1970). However, while awaiting argument, Congress enacted the Amtrak Statute, 45 U.S.C. § 501 et seq.

The Amtrak legislation provided for a national network of intercity rail passenger service and gave the railroads an option of participation in this program. Once a member of this program, railroads were thereafter relieved of all responsibility of providing intercity rail passenger service after May 1, 1971. Inasmuch as the Amtrak legislation applied only to "intercity" service and not to "commuter and other short-haul service", the Supreme Court disposed of the "Danville Flyer" appeal by vacating the District Court Judgment and remanding the cause to the District Court for ultimate remand to the Interstate Commerce Commission to determine whether or not the service involved was "intercity" within the meaning of Section 102(5) of the Rail Passenger Service Act of 1970, P.L. 91–518.

The Commission determined that the service involved was "intercity" within the meaning of Section 102(5) and that it had no jurisdiction over the discontinuance after the effective date of the Act. The Complaint originally challenged the constitutionality of the Amtrak Statute, but upon motion the constitutional challenge was severed and stricken. The only issue remaining is the propriety of the Interstate Commerce Commission's decision on remand. Cross motions for summary judgment are pending.

The reviewing court must affirm the decision of the Commission if the decision could reasonably have been made on the record viewed as a whole. Virginian Ry. Co. v. United States, 272 U.S. 658, 663, 47 S.Ct. 222, 71 L.Ed. 463 (1926); ICC v. Union Pacific RR, 222 U.S. 541, 547–548, 32 S.Ct. 108, 56 L.Ed. 308 (1912); Pre-Fab Transit Company v. United States, 306 F.Supp. 1247, 1250 (S.D.Ill.1969), aff'd 397 U.S. 40, 90 S.

Ct. 815, 25 L.Ed.2d 41 (1970). This standard remains the same even where the Commission has ruled inconsistently on similar factual circumstances without regard to whether the decision for which review is sought is consistent with past practice. FCC v. Woko, Inc., 329 U.S. 223, 228, 67 S.Ct. 213, 91 L.Ed. 204 (1946); Virginian Railway Co. v. United States, supra, 272 U.S. at 663, 47 S. Ct. 222.

The Commission determined that studies done by the railroad established that no substantial number of passengers used the trains on a regular basis as commuters. Although this finding of fact is contested by the plaintiffs, it would appear that whether that study was sufficient to establish a lack of commuter use is a question of weighing it against other evidence which is not a function normally indulged in by a reviewing court. The other evidence is not disputed, except the plaintiffs claim that they did not have ample opportunity to present their evidence—a claim which is unsupported by the record.

■ The principal challenge of the plaintiffs is that the Commission did not apply the proper standards in determining whether the "Danville Flyer" provided intercity service. The order of the Supreme Court which remanded the cause with directions for remand to the Commission is implicit recognition of the role the Commission's experienced judgment should play in the determination of what facts should be determinative of whether a given route was primarily intercity or primarily commuter in nature. That being the case, the decision of the Commission should be affirmed absent a clear showing of prejudicial error. The Commission based its determination that the instant trains provide "intercity" service on an application of the criteria for that determination it had established in Penn Central Transportation Company Discontinuance, etc., 338 ICC 318 (1971).

The Penn Central case referred to by the Interstate Commerce Commission was an earlier "intercity" determination which set forth certain interpretative guidelines, or "criteria" which the Commission stated it would consider in all cases of this nature. These criteria are as follows (338 ICC at 326):

"To sum up on this issue, it is our considered opinion that, viewing as a whole the nature of the 'commuter and other short-haul service' exclusion as that term is used in section 102(5)(a) of the Rail Passenger Service Act of 1970, it would likely include some or all of the following features to be so considered:

(1) The passenger service is primarily being used by patrons travelling on a regular basis either within a metropolitan area or between a metropolitan area and its suburbs;

(2) The service is usually characterized by operations performed at morning and evening peak periods of travel;

(3) The service usually honors commutation on multiple-ride tickets at a fare reduced below the ordinary coach fare and carries the majority of its patrons on such a reduced fare basis;

(4) The service makes several stops at short intervals either within a zone or along the entire route;

(5) The equipment used may consist of little more than ordinary coaches;

(6) The service should not extend more than 100 miles at the most, except in rare instances; although service over shorter distances may not be commuter or short haul within the meaning of the exclusion."

Section 102(5) provides in pertinent part:

" 'Intercity rail passenger service' means all rail passenger service other than (A) commuter and other short-haul service in metropolitan and suburban areas, usually characterized by reduced fare, multiple-ride and commutation tickets, and by morning and evening peak period operations."

In a close reading of this Section it is apparent that additional amplification of its terms would be helpful. "Intercity" service is defined only as that which is not "commuter or other short-haul service". "Commuter and short-haul service" is not defined except that certain "usual characteristics" are mentioned.

The Penn Central criteria provides a workable series of interpretative guidelines for the resolution of cases under Section 102(5). The Commission utilized numerous sources in determining the guidelines which are covered in detail in the report. Included therein are the language of the Statute, the legislative history, previous Commission decisions dealing with commuter service, and the Agency's general experience with other commuter operations. All of the "usual characteristics" mentioned in the Statute are included in the interpretative guidelines. The Penn Central criteria do not restrict the submission of any relevant evidence pertaining to the issue involved. There is nothing in Section 102(5) which is not covered in detail in the Penn Central criteria. It is clear that the Penn Central criteria allows additional evidence over and above that which may be relevant if only the Section 102(5) language were used. Clearly, plaintiffs' argument that the Commission did not apply the proper standards in determining whether the trains involved here provided intercity service is without substance.

Plaintiffs also take issue with the Commission's order of March 18, 1971 on the ground that it is inconsistent with other similar orders dealing with other cases arising under Section 102(5). It is apparent that the present Commission order is different from other orders; however this dissimilarity is not material. The only apparent dissimilarity is that the other orders mention Section 102(5). As pointed out by this Court, the absence of such a reference by the Commission did not limit the submission or consideration of any relevant evidence. The Commission's action was proper, and that being so, any variation with what was done in other cases presents no ground for reversal. Virginian Railway Company v. United States, 272 U.S. 658, 665–666, 47 S.Ct. 222, 71 L.Ed. 463; Whitehouse Trucking Inc. v. United States, 261 F.Supp. 9, 11, (N.D. Ohio 1966), affirmed 388 U.S. 453, 87 S.Ct. 2111, 18 L.Ed.2d 1317.

Accordingly, defendants' Motion for Summary Judgment is granted.