Charles N. PETTY, Plaintiff
and Appellant,

v.

UTAH STATE BOARD OF REGENTS
and University of Utah, Defendants
and Respondents.

No. 15875.

Supreme Court of Utah.

April 23, 1979.

Wayne G. Petty of Moyle & Draper, Salt Lake City, for plaintiff and appellant.

Robert B. Hansen, Atty. Gen., Thomas C. Anderson, Eric W. Bjorklund, Asst. Attys. Gen., for defendants and respondents.

CROCKETT, Chief Justice:

Charles N. Petty, a student in the medical school at the University of Utah, filed this

action,[1] to restrain the defendants from assessing $105 in student's fees as part of the medical school tuition for the school year 1976–77.

Upon issues joined in the pleadings, and pursuant to discovery proceedings, it appeared that there was no dispute as to material facts. Both parties moved for summary judgment. The district court granted defendants' motion and plaintiff appeals.

The Board of Regents established medical school tuition rates of $1,450 for resident students and $3,000 for nonresident students. In addition, the Board of Regents assessed a student fee of $105 for both resident and nonresident students.

Plaintiff takes the position that the $105 student fee was not lawfully fixed, grounded on Item 91 in Chapter 37 of the Appropriations Act of 1976 (effective April 1, 1976) which states:

To University of Utah—College of Medicine
From General Fund ................... 4,561,000
From Dedicated Credits ................ 844,000
*It is the intent of the Legislature* that tuition levels at the College of Medicine be set at $1,450 for resident students, and $3,000 for non-resident students.

He argues that this expression of intent is controlling over any other powers conferred upon the defendants to set tuition.

The district court rejected plaintiff's contention and in its memorandum decision stated:

It is the opinion of the Court that Item 91 of Chapter 37 of the Appropriations Act of 1976 did not repeal, modify or amend 53–48–10 U.C.A.1953, and that under the latter section the Regents had the authority to set the tuition, fees and charges which it did for students at the College of Medicine for the school year 1976–1977.

Plaintiff urges that an inquiry into the legislative background of this appropriations act will show that the legislature intended that the students of the college of medicine pay a comparatively high tuition to cover revenues lost from other sources (federal grants) and that the fee thus set in the appropriations was intended to be the maximum tuition charge.

In support of his attack upon the judgment, plaintiff argues that notwithstanding the powers granted to the Board of Regents, the setting of the student fee is inconsistent with certain provisions of our statutes. He first asserts that appropriations to the University are subject to the Budgetary Procedures Act (Secs. 63–38–1 to 13, U.C.A.1953) and limited by the provision of Sec. 63–38–10 that if the funds appropriated by the legislature are insufficient, the recourse for the institution is to look to further allocation from the governor's emergency fund.

The substance of the portion of the act which would have any application here is contained in Sec. 63–38–3(2) to the effect that monies appropriated for a certain purpose shall be used only for that purpose and not diverted to anything else; and that no appropriation shall be diverted from any department, agency or institution, or from the purpose for which it was appropriated.

Plaintiff argues that because of those provisions that expenditures for each institution shall be kept within the appropriation, the defendants are not entitled to assess the student fee in question, which raises additional funds, and thus results in failure to keep the expenditures within the appropriation. He further points out that his conclusion is correlated to and borne out by the provisions of Sec. 53–48–10(3) which states:

(3) Monies allocated to each institution by legislative appropriation may be budgeted by each institution in accordance with an institutional work program approved by the board, *provided that the expenditures for each institution shall be kept within the appropriation for the applicable period.*

■ We agree with plaintiff's assertion that the University of Utah and the defend-

---

1. A class action on behalf of himself and all other medical students similarly situated, pursuant to Rule 23(b), U.R.C.P.

ants are subject to the general legislative control and budgetary supervision as are other departments of state government.[2] But in opposition to plaintiff's argument that the expression of intent in Item 91, Chapter 37 of the 1976 Appropriations Act is restrictive as to the maximum amount to be charged for student fees and tuition, defendants cite and place reliance on various other statutes quoted below, as plainly giving them the authority to set such fees and tuitions as are necessary for them to carry out their responsibilities in operating the institutions of higher learning.[3]

Sec. 53–34–1, U.C.A.1953 states:

(1) The governing board of each institution of higher education *shall establish the fees and tuitions to be charged all students,*

\* \* \* \* \* \*

(2) The state board of higher education, . . . shall recommend to each legislature the *minimum tuitions,* resident and nonresident, . . . which it deems necessary to implement the budget recommendations for each such institution.

and Sec. 53–34–2 states:

The governing board of each institution of higher education may for its institution charge *such tuition in excess of the minimum tuition and such special fees as in its judgment the needs of the institution require.*

The foregoing provisions are given emphasis by repetition in Sec. 53–48–10(2) which states:

The board shall recommend to each session of the legislature the *minimum tuitions,* resident and nonresident, for each institution in the state system of higher education which it deems necessary to implement the budget recommendations for each such institution. *The board may fix the tuition, fees and charges for each institution at such level as it finds neces-*

*sary to meet the budget requirements of each institution.* [All emphasis added.]

The Board of Regents also have the following powers:

53–38–1. Powers of state board of higher education—Projects and buildings.—

\* \* \* \* \* \*

(1) To acquire, purchase, construct, improve, remodel, add to, and extend self-liquidating projects, revenue-producing buildings, and all other projects . . . [setting forth a numerous and varied list].

\* \* \* \* \* \*

(4) To equip, furnish, maintain and operate such projects and buildings. For the use and availability of the foregoing, the board may impose and collect rents, fees, and charges from students, faculty members, and other persons, firms, and corporations, both public and private.

In analyzing the effect to be given the several statutes relied upon by the respective parties, the following observations are pertinent: in regard to the expression of intent in Item 91 of the 1976 Appropriations Act, it is important to have in mind that the purpose of the Appropriations Act is to allocate finances, and not to affect substantive changes in the law on other matters. Consequently, it is our opinion that such an expression of intent in an appropriations act should not be regarded as repealing or superseding other existing statutory law.

Reverting attention to the provisions of the statutes cited and relied upon by the plaintiff, it is to be noted that the purpose of those particular provisions appears to be to keep the expenditures of each institution within the appropriation made, and is not necessarily intended as any restriction upon student fees authorized to be charged. On the other hand, if the various statutes quoted above from which the regents derive

---

**2.** *University of Utah v. Board of Examiners of State,* 4 Utah 2d 408, 295 P.2d 348.

**3.** As a result of the Higher Education Act of 1969 (Chapter 138, Laws of Utah 1969), Secs.

53–48–1 et seq., the State Board of Regents is given the powers and authority previously vested in the respective governing boards of the state institutions of higher education.

**1302**

their authority are analyzed, it is seen that they are invested with comparatively broad powers to fix tuitions, fees, and charges for the various purposes therein stated. This Court has heretofore recognized such broad authority, for example, in upholding the propriety of assessing such student fees in order to pay off revenue bonds issued for the construction of necessary facilities has been upheld.[4]

The decision of the trial court is aided by the presumptions: (1) that the statutes referred to are constitutional and valid; and (2) that the actions of the Board of Regents thereunder are lawful and within their authority, unless the contrary is shown. There is nothing made to appear in this record to show that the fixing of the $105 student fee was not fixed, collected and used for the lawful purposes authorized by the quoted statutes.

Applicable to this review, it is appropriate to reaffirm our commitment to these general propositions: that an administrative agency should be allowed a comparatively wide latitude of discretion in performing its responsibilities; and that the courts should not intrude or interfere therewith unless the action is so oppressive or unreasonable that it must be deemed capricious and arbitrary, or the agency has in some way acted contrary to law or in excess of its authority.[5] Consistent with that policy we are not persuaded to disagree with the view of the trial court that assessment of the $105 student fee was within the powers of the Board of Regents.

Affirmed. No costs are awarded.

MAUGHAN, WILKINS, HALL and STEWART, JJ., concur.

---

4. *Spence v. Utah State Agr. College,* 119 Utah 104, 225 P.2d 18; *Conder v. University of Utah,* 123 Utah 182, 257 P.2d 367. See Sec. 53–38–12, U.C.A.1953.

5. *Mantua Town v. Carr,* Utah, 584 P.2d 912.