ALMON, INC., a Utah non-profit membership corporation, operating as the Collector Club, Plaintiff,

v.

The UTAH LIQUOR CONTROL COMMISSION, Defendant.

No. 18637.

Supreme Court of Utah.

Feb. 7, 1985.

E. Paul Wood, Salt Lake City, for plaintiff.

David L. Wilkinson, Atty. Gen., Earl F. Dorius, Asst. Atty. Gen., Salt Lake City, for defendant.

STEWART, Justice:

This is an appeal from an order of the Utah Liquor Control Commission (the "Commission") denying renewal of petitioner's liquor store operation and liquor storage and consumption licenses. Petitioner, Almon, Inc., operating as the Collector Club (the "Club"), seeks an order vacating the Commission's order, renewing the Club's license, and expunging the Commission's record of the Club's regulatory violations. We affirm.

In October, 1981, one of the Club's employees was cited by a Salt Lake City police officer for an alleged violation of a city ordinance. As a result of the citation, and following an informal hearing before the Commission on December 7, 1981, the Commission issued an order suspending the Club's liquor license from January 8, 1982, through February 6, 1982.

Following the hearing, on December 18, 1981, Club employees were again cited by Salt Lake City police officers for alleged violations of a city ordinance. The police officers informed the Club's manager that the citations would be turned over to the Commission and continued violations could result in permanent closure of the Club. However, the police never presented the citations to the Commission.

Meanwhile, the Club's manager informed the owner, Almon Covey, of the additional citations. Covey testified that based on his belief that the Commission would receive

notice of the citations and suspend the Club's license further, Covey did not re-. open the Club when the suspension expired on February 6, 1982. Prior to the expiration date, Covey had not informed the Commission that the Club would remain closed and had not been ordered by the Commission to remain closed. Section A96–01–3(2)(D) of the Utah Liquor Control Rules and Regulations provides that the Commission must be informed in writing at least seven days prior to the closure of any state store which will remain closed for more than three consecutive days or 72 hours.[1]

In March, 1982, a Commission auditor informed Covey that the Club's license might be in jeopardy because of the failure to reopen. In early April, Covey contacted Joe Coccimiglio, a Commission licensing and compliance officer, and informed him of the two December citations. Coccimiglio, who had been informed that the Club was closed, told Covey that the closure could result in nonrenewal of the Club's license. In late April, a Commission auditor informed the Club's manager that the Commission staff would recommend nonrenewal of the Club's liquor license for failure to give written notice of the Club's closure pursuant to section A96–01–3(2)(D) of the Commission Rules and Regulations. This information was confirmed by letter.

The Club thereafter submitted a proper application for renewal of its liquor license. A hearing was held June 22, 1982, to consider the Commission's objections to renewal of the Club's license, the result of which was a recommendation of nonrenewal. The hearing examiner stated that the Commission may have in past years been lenient with respect to violations, but that the statutes were to be strictly enforced because there were more applications for licenses than there were liquor licenses. The Commission officially declined to renew the Club's license after considering the hearing examiner's findings and conclusions and the Club's objections to the find-

ings. The Commission made no findings on the Club's objections.

Petitioner contends that: (1) it was not required to give the Commission written notice that it intended to remain closed because the Commission had actual notice; (2) the Commission's shift from a lenient enforcement policy to a strict enforcement policy without following formal rule making procedures violated due process of law; (3) the Commission's failure to timely notify petitioner of the nonrenewal of the liquor license was arbitrary and capricious and renders such action void; (4) the Commission is estopped from asserting that petitioner violated the applicable statutes and regulations; and (5) the Commission admitted prejudicial and irrelevant evidence and did not rule upon the Club's objections.

### I.

■ The Club asserts that the Commission had actual notice of the Club's closure and therefore the Club should not have been required to give the Commission written notice of closure. Even assuming that something other than written notice to the Commission would satisfy the Club's duty to notify the Commission prior to closing, the record does not support the contention that the Commission had actual notice. Although the Commission eventually discovered that the Club had remained closed past the date ordered for suspending the Club's license, there is no evidence to suggest that the Commission had notice of the intention to remain closed before February 6, 1982. Utah Liquor Control Regulation A96–01–3(2)(D) specifically requires notice of intent to close a state store "at least seven (7) days prior to the closing." In addition, the regulation requires that the notice contain information that the Commission never received, including the date of the closure, the date on which the Club expects to reopen and why the Club is closing. Therefore, the petitioner clearly

---

**1.** Section A96–01–3(2)(D) also contains a provision allowing telephone notification for emergency closure.

did not comply with the notice of closure requirements.

## II.

The Club next contends that even if it violated the Commission's regulations, it had a right to rely on the previous policy of leniency of the Commission in renewal proceedings. The Club argues that because the Commission allegedly announced a policy of strict compliance without following formal rule making procedures, the Club's due process rights were violated. The Club's proof of the change in the enforcement policy consists of the following statements by the hearing examiner about Commission policy. "We're certain that the policy [of] the Commission has been not to renew, or revoke. And that's been the guiding principle as I approached all of these hearings." "[T]he Commission, I believe, has had a lenient policy as to compliance. Perhaps the policy is not as I perceived it." "I don't think it's for me to decide whether we're lenient or not. I don't think we have that right. We have to look at the facts and say, 'Are they right or are they in violation?' and go on that premise."

■ The Club has not provided any evidence establishing that the Commission has changed its enforcement policy. But even if the Commission has changed its policy, the Commission has some discretion in setting its enforcement policies. Utah Code Ann., 1953, Section 16–6–13.10, provides that the Commission may refuse to renew a license for violation of the Utah liquor laws.[2] A minor tightening of the Commission's enforcement policy is not sufficient to invalidate enforcement action, absent some additional showing, such as illegally motivated discrimination. *See, e.g., Yick Wo v. Hopkins,* 118 U.S. 356, 6 S.Ct. 1064, 30 L.Ed. 220 (1886) (systematic racial discrimination by licensing officers denies equal protection).

The United States Supreme Court treated a similar issue in *Federal Communica-*

*tions Commission v. WOKO, Inc.,* 329 U.S. 223, 67 S.Ct. 213, 91 L.Ed. 204 (1946). In *WOKO,* the Court addressed a challenge to the Federal Communication Commission's departure from a past course of dealing in a license renewal proceeding. WOKO argued that previously the Commission had not dealt as severely with applicants under similar circumstances. The Court stated:

> The mild measures to others and the apparently unannounced change of policy are considerations appropriate for the Commission in determining whether its action in this case is too drastic, but we cannot say that the Commission is bound by anything that appears before us to deal with all cases at all times as it has dealt with some that seem comparable.

329 U.S. at 228, 67 S.Ct. at 215.

This principle has since been recognized in many diverse situations by various courts. *E.g., American Trucking Association v. Atchison, Topeka & Sante Fe Railway,* 387 U.S. 397, 416, 87 S.Ct. 1608, 1619, 18 L.Ed.2d 847 (1967); *Federal Trade Commission v. Crowther,* 430 F.2d 510 (D.C.Cir.1970); *Illinois Commerce Commission v. United States,* 346 F.Supp. 910 (S.D.Ill.1972); *Reaveley v. Public Service Commission,* 20 Utah 2d 237, 436 P.2d 797 (1968); *Butler Oak Tavern v. Division of Alcoholic Beverage Control,* 20 N.J. 373, 120 A.2d 24 (1956). *Cf. Utah Power & Light Co. v. Utah State Tax Commission,* Utah, 590 P.2d 332 (1979).

■ To some extent "[t]he liquor control laws and regulations must be administered in the light of changing conditions." *Butler Oak Tavern v. Division of Alcoholic Beverage Control,* 20 N.J. 373, 120 A.2d 24, 29 (1956). If the Commission has changed its enforcement policy, it "might have chosen to advise licensees that a more rigid enforcement policy was imminent, [but it] was not required to do so." *Id.* This conclusion is supported by *Reaveley v. Public Service Commission,* 20 Utah 2d

---

2. *Compare* section 16–6–13, which provides that the secretary of state *shall* revoke the charter of

any corporation which commits one of the enumerated illegal actions of the section.

237, 436 P.2d 797, 800 (1968), in which we stated:

> [A]n administrative agency which has a duty to protect the public interest ought not to be precluded from improving its collective mind should it find that a prior decision is not now in accordance with its present idea of what the public interest requires.

■ Our standard of review of Commission actions is whether the decisions are supported by "substantial evidence, unless it clearly appears that they are arbitrary or capricious." *Id.* (quoting *Courier Post Publishing v. Federal Communications Commission*, 104 F.2d 213, 218 (D.C.Cir. 1939)). *See also Sandy State Bank v. Brimhall*, Utah, 636 P.2d 481 (1981); *Petty v. Utah State Board of Regents*, Utah, 595 P.2d 1299, 1302 (1979); *Utah Power & Light Co. v. Utah State Tax Commission*, Utah, 590 P.2d 332, 335 (1979). To determine whether the Commission's determination was arbitrary and capricious, we must examine the agency's explanation of its departure from prior norms and the legal basis for its determination. *See Secretary of Agriculture v. United States*, 347 U.S. 645, 653, 74 S.Ct. 826, 831, 98 L.Ed. 1015 (1954); *Federal Trade Commission v. Crowther*, 430 F.2d 510, 514 (D.C.Cir.1970).

■ If, in fact, the Commission has actually changed its enforcement policy, its justification for doing so appears to be that the number of licenses currently available is limited. The Commission is charged with the task of assuring that the needs of the alcohol-consuming public be met. Section A96–01–3(2)(D) is designed to alert the Commission to the closure of any Club so that, when appropriate, the unused license can be transferred to an organization that will serve the public's needs. Where there are fewer licenses available than applicants for licenses, the Commission may reasonably treat violations of this rule as serious and impose sanctions.

The case cited by the Club in support of its position is not to the contrary. In *Sun Ray Drive-In Dairy, Inc. v. Oregon Liquor Control Commission*, 16 Or.App. 63, 517 P.2d 289 (1973), the court held that where the legislature had delegated broadly-worded power to the Oregon Liquor Commission, the Commission must formulate rules upon which the decision to issue liquor licenses would be based. On appeal after remand the Court stated that once guidelines had been adopted, "[t]he Commission must have certain latitude in applying these criteria to conflicting interests." *Sun Ray Drive-In Dairy v. Oregon Liquor Control Commission*, 20 Or.App. 91, 530 P.2d 887, 889 (1975). The concern in *Sun Ray* was that the agency should adopt standards sufficiently definite and clear that persons of ordinary intelligence would be able to understand them. *Accord Athay v. State*, Utah, 626 P.2d 965, 968 (1981).

■ The situation in this case is distinguishable. The statutory language here provides sufficient guidance for the ordinary person to know what conduct is subject to sanctions, and hence published standards are not needed. The legislature has clearly stated that the Commission may refuse to renew a license where a Club does not comply with the specific notice requirements before closing. The statute does not use broad language like "demanded by public interest or convenience," as was at issue in *Sun Ray*.

### III.

■ The Club's next contention is that the failure of the Commission to timely notify the Club of the Commission's decision not to renew the liquor license was arbitrary and capricious and therefore void. We do not address the merits of the Club's argument because it was raised for the first time on appeal. *Shayne v. Stanley & Sons, Inc.*, Utah, 605 P.2d 775 (1980).

### IV.

■ The Club's fourth argument is that the Commission is estopped from asserting that the Club violated any statutes or regulations relevant to a renewal proceeding. The Club's argument is without merit. The

elements of estoppel have been clearly identified by this Court.

> Estoppel arises when a party ... by his acts, representations, or admissions, or by his silence when he ought to speak, intentionally or through culpable negligence, induces another ... to believe certain facts to exist and that such other ... acting with reasonable prudence and diligence, relies and acts thereon so that he will suffer an injustice if the former ... is permitted to deny the existence of such facts.

*Morgan v. Board of State Lands,* Utah, 549 P.2d 695, 697 (1976). *See also Celebrity Club, Inc. v. Utah Liquor Control Commission,* Utah, 602 P.2d 689, 694 (1979).

The Club alleges that the "inactions of Commission representatives in conjunction with the statements of the police officer" were reasonably relied on in closing the Club. The Commission had no communication with the Club subsequent to the January order of closure. It was only after the Club was to be reopened that there is evidence that the Commission learned of the Club's decision to remain closed. The Commission therefore had no real opportunity in which to act in such a way that the Club could rely on the Commission's representations.

To view the circumstances in any other light would put a burden on the Commission to forsee what individuals might think the Commission was doing or going to do, and then require the Commission to notify those individuals that they do not intend such actions. Here, the Commission was unaware of the citations issued by the Salt Lake City police officers and unaware that the Club thought that such citations would result in a suspension of their license. The Club would have us hold that the Commission should have acted to correct a misconception of the Club's, one the Commission knew nothing about, or that the Commission is estopped from asserting that the Club wrongfully failed to reopen. The proposition is untenable.

## V.

The Club's remaining arguments concerning the admission of "prejudicial and irrelevant evidence" and the failure of the Commission to rule upon the Club's objections to the findings of fact and conclusions of law of the hearing examiner are without merit.

We affirm.

HALL, C.J., HOWE and DURHAM, JJ., and KENNETH RIGTRUP, District Judge, concur.

ZIMMERMAN, J., having disqualified himself, does not participate herein; RIGTRUP, District Judge, sat.